### KINNEY v. HEATHERINGTON *et al.*

No. 1751.    Opinion Filed January 21, 1913.

On Rehearing, May 6, 1913.

(131 Pac. 1078.)

1. **MORTGAGES—Deeds.** Under section 12, c. 8, p. 95, Sess. Laws 1897, section 1196, Comp. Laws 1909 (Rev. Laws 1910, sec. 1156), a deed absolute upon its face, but intended to be defeasible, is a mortgage, and a court of equity is required to so decree it.

2. **SAME—"Defeasible."** A quitclaim deed absolute upon its face, reciting receipt of a consideration of $3,000, was executed and delivered by the ward of plaintiff to a grantee who afterwards died and whose administrator and heirs claimed the land under and by virtue thereof. On the trial of a case brought to set the same aside, and to have the title restored to the grantor, the facts and findings of the court disclosed that the grantor had been having trouble with a concern which claimed rights upon and were crossing the premises against the owner's will, and, believing that some indefinite advantage might come to him by reason of the conveyance, he executed the same to the grantee, who was at that time and had been for a long time prior thereto his confidential friend. No consideration whatsoever was in fact paid for the land, and the transfer was not intended by either of the parties to be a sale or a gift; the grantee never had nor made any claim of right, title, or interest in the land, but distinctly and specifically disavowed having any interest therein; nor did he take possession of the same nor of any part thereof, but the grantor continued in its complete possession and had continued to improve and pay the taxes and the interest on the mortgage thereon. **Held,** that it was not the intention of either of the parties that the grantor was to be divested of any of the beneficial interests in the land nor the grantee to receive it, and that the deed was intended by both to be defeasible, and upon timely application on these facts, there being found nothing due grantee, his estate or his heirs, it is the duty of a court of equity to hold the deed to be a mortgage, and cancel it.

On Rehearing.

3.  **APPEAL AND ERROR**—Necessity of Decision—Loss of Juris-
    diction. Section 5, art. 7, of the Constitution (section 190, Wil-
    liams' Ann. Const. Okla.), is directory, and this court does not
    lose jurisdiction to determine and render judgment in a case
    after the lapse of six months from the date of its submission.

(Syllabus by the Court.)

*Error from District Court, Pawnee County;*
*L. M. Poe, Judge.*

Action by Michael J. McNeal, by his guardian, David
Kinney, against J. F. Heatherington, as administrator of the
estate of Henry A. Gifford, deceased, and others. Judgment
for defendants, and plaintiff brings error. Reversed and re-
manded, and petition for rehearing denied.

*Charles J. Wrightsman, Victor O. Johnson, Louis S. Wil-*
*son* and *Devereux & Hildreth,* for plaintiff in error.
*Wm. Blake,* for defendants in error.

DUNN, J.   This case presents error from the district
court of Pawnee county. February 29, 1908, Michael J. Mc-
Neal, by and through his duly appointed guardian, David
Kinney, brought his action against J. F. Heatherington, as the
administrator of Henry A. Gifford, deceased, and against the
surviving heirs of the said decedent. The object of the suit
and the preliminary facts upon which reliance is based for
recovery are best set forth in the petition of plaintiff, which in
part reads as follows:

"That on December 16, 1907, by the consideration of the
county court of said county, Michael J. McNeal was found
and adjudged mentally incompetent to manage his property,
and the plaintiff was fully and regularly appointed as his
guardian. That thereafter, on December 27, 1907, the plain-
tiff gave bond as required by law and letters of guardianship
issued to him and the plaintiff thereby became, ever since has
been, and still is, the duly appointed, qualified, and acting
guardian of the person and the estate of the said Michael
J. McNeal. * * * That on and for some time prior to the
13th day of February, 1907, the said Michael J. McNeal was

of unsound mind and was possessed of and under the influence of delusions in reference to the said land, one of which delusions was that he (the said McNeal) was encompassed by enemies who were lying in wait, seeking to destroy the buildings upon said premises by setting them on fire, and the said McNeal was possessed of and under the influence of delusions persuading him that his neighbors were enemies and were plotting against him (the said McNeal) and against his property, and were seeking opportunity to injure him and to destroy his property. That said fears and apprehensions were without foundation in fact and without any reasonable foundation whatsoever, but were mere delusions and were due to the unsoundness of mind of the said McNeal. That on and for some days prior to said February 13, 1907, there was pending certain litigation between the said McNeal and certain other parties having a lease on the aforesaid premises, for oil and gas. That said litigation was commenced February 1, 1907, by said lessee to enjoin the said McNeal from interfering with a right of way, claimed by the said lessee over and across the premises aforesaid and sought to be used by the said lessee in going to and from other leaseholds. That at the commencement of said litigation an injunction was obtained by said lessee against the said McNeal, which writ of injunction was served upon McNeal February 4, 1907. That thereby the said McNeal was frightened and intimidated by threats which he believed had been made to arrest and imprison him (the said McNeal) for alleged violations of the said injunction. That said fears and conduct of the said McNeal were due to his unsoundness of mind and his inability to understand the nature and force and effect of said proceedings and to the delusions possessing, controlling, and influencing the mind of the said McNeal. For the reasons aforesaid, McNeal was in fear of being arrested, and that upon being arrested he would not be able to give bond for his release, and that he would be kept and confined in jail, and that during said confinement his property would be wasted and destroyed. That all said fears and apprehensions were without foundation in fact and had no reasonable foundation whatsoever, but were incident to the unsoundness of mind of the said McNeal, and induced by the excited and distorted imagination of the said McNeal, and by the delusions controlling and influencing him, and by his lack of comprehension and his inability to understand the proceedings

and facts hereinbefore mentioned. That on the 13th day of February, 1907, the said Michael J. McNeal, because of the aforesaid unsoundness of mind and induced by the delusions, fears, and apprehensions aforementioned and for the purposes hereinafter set forth, executed a certain quitclaim deed of conveyance purporting to quitclaim and convey the aforesaid premises to the aforesaid Henry A. Gifford. * * * That the expressed consideration in said deed was the sum of $3,000, but in truth and in fact said conveyance was merely colorable and wholly without consideration, except as hereinafter stated and no sums of money or other thing of value was ever paid or promised therefor by the said Henry A. Gifford, nor was any sum of money or other property or thing of value received therefor by the said Michael J. McNeal. That the purpose of the said Michael J. McNeal in executing said deed, in so far as the said Michael J. McNeal was competent and able to entertain a purpose, was to place said property of record in the name of the said Henry A. Gifford to indemnify the said Gifford against any loss which said Gifford might sustain by becoming a surety for the said McNeal in the event that the said McNeal should be arrested and imprisoned in accordance with the fears and apprehensions hereinbefore mentioned, and the further purpose of the said McNeal in executing said conveyance was to divert the hostility of the supposed enemies of the said McNeal from the said premises and to remove the danger that the buildings on said premises might be burned by the said supposed enemies of the said McNeal."

To this petition the defendants filed an answer which, admitting the conveyance, denied generally the balance of the allegations therein contained. A trial was had to the court without the intervention of a jury, which on request made special findings of fact and its conclusions of law as follows:

"That said deed was executed on the 13th day of February, 1907, by the said M. J. McNeal to F. M. Gifford, covering the land described in the petition. That said deed recited a consideration of $3,000 as the purchase price of said land, and acknowledged receipt of the same in the face of the deed. That on the 30th day of August, 1907, the grantee named in said deed was killed in a railroad accident at or near Cleveland, Okla. That his death was subsequent to the execution

of said deed, and prior to the commencement of this action. That at the time of the conveyance the said McNeal was not insane. That at the time of the execution of the deed, and in the presence of the justice of the peace who took the acknowledgment, the grantee, Gifford, delivered to the grantor, McNeal, a roll of money. That the same was not counted either by the grantor or the grantee. That the justice and another person, who were present at the time, had their attention called to the payment of the money by McNeal, the grantor, and that · the deed was delivered to the grantee in their presence by the grantor. That said deed was afterwards duly recorded with the register of deeds within and for Pawnee county; the same being delivered to Case Wear by the grantor, McNeal, and afterwards left at the place of Gifford, the grantee. That grantor and grantee were confidential friends and had been for some time prior to said transaction. That there was no fraud or deception practiced by the grantee in the procuring of said deed, or any inducement held out by him for such purpose. That after the execution of the deed the said McNeal remained in the actual possession of the land and was in possession of the same at the commencement of this action. That at the time of the conveyance there was a mortgage on the premises conveyed, and that the said McNeal paid interest on the mortgage after said conveyance and before the death of Gifford, also the taxes. That Gifford exercised no control over said land prior to his death and after the execution of said deed, and had disclaimed any interest in said land to two or more witnesses. That the Paola Oil & Gas Company had commenced a suit against McNeal a short time before the conveyance to Gifford, and McNeal had been personally served with process. That he (McNeal) had been having some slight trouble with said company prior to this suit on account of their men and teams crossing a portion of the land described in the deed, that McNeal ordered them to refrain from crossing said land. The evidence does not disclose any motive for making the deed herein sought to be canceled, outside of the consideration stated in the face of the deed, except that McNeal was having trouble with said Paola Oil & Gas Company and might have believed that some advantage would come to him by reason of the conveyance.

"The above and following facts are all that the court can find as being predicated upon relevant testimony adduced in this cause, and for the purpose of said findings I have eliminated all of the evidence given by the said McNeal who was permitted to give testimony in detail in this case, not for the purpose of affecting the consideration or conveyance, but for the prime purpose of testing his mentality, or arriving at a conclusion as to his sanity or insanity. That there was in fact no consideration to support the conveyance, and that the money which passed between the grantor and grantee at the time of the execution of the deed was for the purpose of giving color to the transfer. That at the time of the conveyance the grantor was a man of average mentality, as measured by the general community in which he lived. That just prior to the death of the grantee, Gifford, McNeal had had a deed prepared reconveying the land in question to him, but that same was never executed by Gifford. That, after the deed of conveyance was executed, the grantor remained in the actual possession of the premises conveyed, and continued to improve said place, paid the taxes thereon. That at the time of the conveyance there was no obligation of any kind owing by the grantor to the grantee, and that grantor was not and had not been called upon to make bond. That said conveyance was made by grantor without any inducements being held out by the grantee, and purely a scheme which originated in the mind of the grantor, and the grantee acted purely for the accommodation of the grantor.

### CONCLUSIONS OF LAW.

"That the deed which acknowledges receipt of the sum of $3,000 as the purchase price for the land described therein, in the absence of fraud on the part of the grantee, is conclusive as between the grantor and the grantee or those claiming under him. That the deed of conveyance in this case was a personal transaction between the deceased, Gifford, and the said McNeal. That the suit is an action brought by McNeal, through his guardian, and against the administrator of the grantee, Gifford, who defends on behalf of the next of kin and survivors of the said Gifford, deceased, and that, as a matter of law, under section 2829, Curtiss' Digest of the Law of Oklahoma, the said McNeal's testimony was wholly inadmissible for the purpose of impeaching the consideration of the said deed. That the said McNeal voluntarily

placed himself in the position that he now finds himself, without any inducement or fraud or deception having been practiced upon him by the grantee. That, having done so, a court of equity will not upon his testimony alone, as to the main transaction, set aside a deed thus voluntarily made, as against the administrator or surviving heirs of the said Gifford, deceased."

On the denial of a motion for new trial, the plaintiff, as plaintiff in error, has filed the cause in this court and among other grounds asserts that the court erred in not finding the deed was a mortgage. Because of the conclusion to which we have come in reference to this proposition, we do not deem it necessary or essential to set forth or discuss the numerous other assignments of error.

The averments of the petition and the findings of the court, in so far as they relate to the conveyance, the fact that it was made without consideration and was not a gift, seem to be abundantly supported by the evidence. Not only did Gifford never make any claim of right or interest of any kind or character in the land prior to his death, but he distinctly disavowed having any interest therein, and his widow, one of the present claimants, on numerous occasions after his death, asserted that the land was not theirs and that her deceased husband had not purchased it. The learned trial court seems to have come to the conclusion that the terms of the deed were conclusive and could not be disputed, and hence, notwithstanding the fact that the land clearly and unquestionably belonged to McNeal and did not belong to the decedent, his estate or his heirs, a condition disputed by no one, the court was powerless to grant relief, but was compelled by the law to adjudge and decree the land from one who did own it to the defendants, who everybody admits did not. In our judgment this conclusion on his part was clearly error and ought not to stand.

It is common doctrine that, although a deed may be absolute in form, it will be deemed and considered a mortgage if it is given merely as security, and, to determine its import,

all the relations existing between the parties at the time of its execution may be considered. The administration of this relief is always applied where it carries out the real intention of the parties to prevent fraud and imposition and to promote justice, and courts have uniformly, to effect these ends, looked through the form and method adopted by the parties and effectuated the real object and intent of the transaction. *De Bartlett v. De Wilson et al.,* 52 Fla. 497, 42 South. 189, 11 Ann. Cas. 311; *Peugh v. Davis,* 96 U. S. 332, 24 L. Ed. 775. And this jurisdiction has been exercised independent of the statute of frauds; the courts in the administration of the rule refusing to allow this statute to be used as an instrument of fraud where it could be prevented. *Bork v Martin,* 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570. The trial court was manifestly and properly impressed with the force of this doctrine, and in our judgment would have given relief thereunder if it could have found that McNeal was in any wise indebted to Gifford, for in his eighteenth finding of fact he states that, at the time of the conveyance, there was no obligation of any kind owing by the grantor to the grantees, and that the grantor was not or had not been called upon to make bond. This finding was evidently upon the theory that, had McNeal been indebted to Gifford or had Gifford been called upon to make bond for McNeal, then the deed might have been construed as a mortgage to secure any liability incurred thereby and under such a condition a reconveyance could be decreed, but, finding that neither of these conditions existed, concluded against the mortgage theory.

As above noted, and to be further commented on, it was not the intention of either party that a gift was to be made or received and no claim that there was to be a sale and purchase. Every conclusion, except that this deed was intended to be defeasible, even though not given as security for money or other substantive thing, is excluded. Neither McNeal nor Gifford intended that the grantor should be divested of

the beneficial interest in the land nor that the grantee should receive it. Under these circumstances, our statutees require that a court of equity declare this deed a mortgage, and, if there is no liability due the grantee, to cancel it.

Section 12, c. 8, p. 95, Sess. Laws 1897, section 1196, Comp. Laws 1909 (Rev. Laws 1910, sec. 1156), provides as follows:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

"Defeasible," according to Webster's International Dictionary, means, "Capable of being or liable to be avoided, annulled, or undone."

The judgment purported to be an absolute conveyance, but clearly under the facts and findings of the court was intended to be defeasible, and therefore should be deemed or, what is the same thing, adjudged to be a mortgage. There being nothing found due thereon to the grantee, his estate or his heirs, the same should be cancelled. And why not? It would be a pitiable commentary upon the impotency of a court of equity to do justice and equity if, in view of the facts established in this case, it were powerless to render relief. Let us note the facts which no one denies and all admit: McNeal owned this land; it had always been his; he had originally entered it as raw government land, had settled thereon, established his residence, improved it, and transformed it from a wilderness to a habitation and a home. From the early history of the territory to the date of the trial, he had continued in its occupation and improvement; he had never ceased to pay the interest on the mortgage which it bore, nor the taxes assessed against it by the state. He had never sold it nor given it away, and he still desired to continue its retention. Being in trouble and having an indefinite notion that some fanciful or actual advantage would accrue to him and without any fraudulent in-

tent, he executed and delivered this deed, relying upon the integrity and honesty of purpose of this friend when the day of trouble had passed, to reconvey to him the land. Neither anticipated that death by accident would intervene and prevent, and certainly neither anticipated that in such event any one could be animated by so vile a purpose as to take advantage of such situation, the outgrowth of trust and confidence, to strip from him his home. When anybody is deprived of property in one way, it is called robbery; in another, burglary; in another, stealing. The facts involved in defendants' keeping Michael McNeal's land and home would not bring this case within either of the classifications mentioned, but the effect on him and the result to those who thus despoiled him would be precisely the same, and this court, with its fuller opportunity for investigation, and, because thereof, a better understanding of the law than was enjoyed by the trial court, would be abashed to sit in judgment and award success to such villainy.

The judgment of the trial court is therefore reversed, and the cause remanded, with instructions to set the same aside and enter one canceling the deed.

TURNER, C. J., and KANE, J., concur. HAYES and WILLIAMS, JJ., not participating.

---

## On Rehearing.

DUNN, J. Aside from the questions already considered and determined in the foregoing opinion, counsel for defendants in error urge in a motion for rehearing that the court had lost jurisdiction of this action at the time judgment was rendered because of the provisions of section 5 of article 7, sec. 190, Williams' Ann. Const. Okla., which reads as follows:

"The Supreme Court shall render a written opinion in each case within six months after said case shall have been submitted for decision."

This question has several times been considered by the

court, and, while in each instance denied, no opinion was written thereon, and, as this case presents it again, it is deemed wise to now state our judgment thereon.

It is to be first observed that there is no language which provides that, in the event of the failure of the court to conform thereto, jurisdiction is lost. The remedy which counsel seeks to have applied to be allowed would of necessity, therefore, by the court be written into the law and would impose a most grievous burden upon a litigant, to relieve himself of which he would have absolutely no power, and hence, to carry out the insistence made, would be to cause righteous litigants to lose their rights through conditions which they had not brought about and could not prevent. To allow the claim made would be to punish parties to actions because of a failure of the court, and in our judgment no such intention existed in the minds of the framers of the Constitution or those who adopted it. It may be said in this connection that, under the rules of the court, a great number of cases are submitted at each of its regular terms, such a number as in the judgment of the members of the court can be disposed of prior to its next regular sitting. The number of cases submitted is of course within the control of the court, but the character thereof is usually entirely unknown until after the submission has been made and the cases investigated. The Constitution and laws of the state require precedence given to cases involving certain questions, and these often arise after the regular submission has been made. In addition thereto, cases involving questions *publici juris* are uniformally advanced, and all of this character of litigation exacts under the laws at the hands of the court its consideration prior to the consideration of cases where merely private rights are involved. Moreover, in the rare instances where decisions are delayed longer than six months after the submission, in virtually every case the propositions presented are novel and require extended investigation by the different members of the court prior to the time when a satisfactory conclusion can

be reached thereon, and in such instances it will be seen that to literally carry out this provision of the Constitution would or might often result in injustice.

The foregoing are some of the reasons which occasion delay and over which the court is almost if not entirely without control. Counsel for neither party in this case cite authority in point and we know of none. See, however, *Haskell, Governor, v. Reigel et al.*, 26 Okla. 87, 108 Pac. 367; *Town of Grove v. Haskell et al.*, 24 Okla. 707, 104 Pac. 56.

We therefore hold that section 5, art. 7, of the Constitution (section 190, Williams' Ann. Const. Okla.), is directory, and this court does not lose jurisdiction to determine and render judgment in a case after the lapse of six months from the date of its submission.

The other questions presented have had our full consideration, and, finding no error in the conclusion to which we have heretofore come, the petition for rehearing is denied.

KANE and TURNER, JJ., concur. HAYES, C. J., and WILLIAMS, J., not participating.