### ATCHISON, T. & S. F. RY. CO. v. LONG, County Assessor, et al.

No. 17907—Opinion Filed Dec. 7, 1926.

(Syllabus.)

1.  **Constitutional Law—Distribution of Governmental Powers—Invalidity of Initiated Measure Attempting to Restrict Judicial Discretion of Courts.**

A section of an initiated measure adopted by a vote of the people under the initiative and referendum laws of the state of Oklahoma, which provides that the district courts shall try certain classes of cases within ten days after the defendant has answered and that appeals must be taken within ten days from the rendition of judgment, except for good cause shown the trial court may extend this time for a period not to exceed 20 days and the Supreme Court shall determine the appeal at the earliest possible moment, is unconstitutional and void, it being an attempt by the legislative branch of the government to usurp the powers conferred upon the judicial branch of the government by the Constitution and to limit or abolish the judicial discretion belonging to the court and necessary for the proper administration of justice.

2.  **Courts—Unconstitutionality of Initiated Measure Authorizing District Judges to Decide Causes Outside County Where Pending.**

A provision in an initiated measure approved by a vote of the people under the initiative and referendum laws of the state

of Oklahoma, providing that district judges may hear and determine causes and render judgment in another county than the county where such cause is pending, is void, it being in conflict with section 25 of article 7 of the Constitution of Oklahoma, providing that "the terms of the district court shall be held at the county seat of the respective counties."

### 3. Statutes — Statute Unconstitutional in Part—Test as to Whether Remaining Portions Enforceable.

The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the law-making power of the state, whether it be by initiative petition or by the Legislature, would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If , however, the constitutional and unconstitutional portions are so dependent on each other as to warrant the belief that the law-making power intended them to take effect in their entirety and would not otherwise have enacted the measure, it follows that, if the whole cannot be carried into effect, it will be presumed that the law-making power would not have passed the residue independently, and accordingly the entire statute is invalid.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by the Atchison Topeka & Santa Fe Railway Company, against Ora Long, County Assessor, and Paul Prince, County Treasurer, of Lincoln County. Judgment for defendants, and plaintiff appeals. Affirmed.

Rainey, Flynn, Green & Anderson and Courtland M. Feuquay, for plaintiff in error.

Roscoe Cox, County Atty. of Lincoln County, George F. Short, Atty. Gen., Wm. L. Murphy, Asst. Atty. Gen., and Erwin & Erwin, for defendants in error.

Opinion by PHELPS, J. At the regular primary election held in Oklahoma on August 3, 1926, there was submitted to the voters of the state, as provided by our initiative and referendum laws, State Question No. 141, Initiative Petition No. 92, being an act regulating the manner of assessing taxes, which question was adopted by a vote of the people.

Section 2 of the act provided, in brief, that when the county excise boards of the several counties in the state have made their levies for taxation for the ensuing year for county, city, school district, and all other purposes for which they are authorized to make levies, that such excise boards shall certify the amounts of the levies so made, together with the total rate of taxation in such county and the subdivisions thereof, and file the same with the county assessor; further providing that the State Equalization Board, upon making a levy for state purposes, shall make a similar certificate and cause the same to be filed and spread of record in its office.

Section 3, in full, reads as follows:

"At any time within 30 days after the date of the publication of said notice, any taxpayer who contends that such levy, or any portion thereof, so made upon his property, or any part thereof in this state, is in excess of the limitation prescribed by the Constitution or laws of this state for the purpose for which said tax was levied, or is in excess of the limitation prescribed by the Constitution and laws of this state to be levied upon the particular character of property to be taxed, or is for any other cause invalid, may institute an action of injunction in the proper district court of the state to enjoin the spreading upon the record of the illegal or excessive portion of said levy. As to levies made by the county excise boards, the county assessor and county treasurer of said county shall jointly be the defendants, and it shall be the duty of the county attorney of the county to appear for them and represent the county in such action. As to levies made by the State Board of Equalization, the State Auditor shall be the defendant, and it shall be the duty of the Attorney General to appear for him and thus to represent the state in such action.

"The defendants shall plead or answer within ten days after service of summons in said cases, and the district court shall try the case within ten days thereafter, which trial may be had in chambers if the court be not then in session, and in any county in the judicial district, and upon a trial the court shall render judgment, adjudging and decreeing the said levy or portion thereof so attacked to be void or valid, as he may find the facts and the law to be. From such judgment an appeal may be taken to the Supreme Court of the state of Oklahoma within ten days from the date of the rendition of the judgment and not thereafter, except for good cause shown the trial court may extend this time for a period not to exceed twenty days, and the Supreme Court shall determine the appeal at the earliest possible moment. If no appeal be taken the judgment of the district court shall be final.

"Any levy not made in violation of the

state or federal Constitution, the validity of which is not contested within 30 days as above provided, shall, after the expiration of the said 30 days be incontestable; provided, that any tax contested by any taxpayer and adjudged by the court to be unconstitutional, shall, when not distributed, be refunded to any who have paid same, and shall not thereafter be collected."

In pursuance to the provisions of this act, plaintiff in error filed its action for injunction in the district court of Lincoln county against the defendants in error, Ora Long, county assessor, and Paul Prince, county treasurer. When the cause was called for trial the defendants contended that the act constituted an unwarranted interference with the judicial powers of the state and is, therefore, violative of the provisions of our Constitution, which contention was sustained by the district court and the cause dismissed, from which order and judgment this appeal is prosecuted.

The sole question presented by the appeal is whether the act, and particularly section 3 thereof, is in conflict with the provisions of the Constitution of Oklahoma. The act, having been initiated and enacted by a vote of the people, stands, so far as the questions presented here are concerned, in the same position it would have stood in if it had been a measure enacted by the Legislature.

It is urged that the act is void as being violative of section 1, art. 4, of the Constitution of Oklahoma., providing that:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The Legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

The law is well settled that the powers and functions of the three several co-ordinate branches of the state government must be and forever remain separate and distinct, each one designed for a separate purpose and each functioning in its own sphere, and we are in thorough accord with the sentiment expressed by this court in Re County Commissioners, 22 Okla. 435, 98 Pac. 557, wherein it, speaking through Mr. Justice Williams said:

"The distribution of the powers of government, into three separate departments, legislative, executive, and judicial, is the basic principle of our constitutional system."

In that opinion we also find a quotation from Webster's Works, volume 3, p. 29, wherein that eminent authority said:

"It cannot be denied that one great object of written Constitutions is to keep the departments of government as distinct as possible; and for this purpose it imposes restraints designed to have that effect."

In that case this court had under consideration an act of the Legislature attempting to confer upon this court the power and authority, in a certain judicial district, where, in the judgment of this court, the necessity existed, to recommend to the Governor that an additional district judge be appointed by him for such length of time as in the judgment of the Supreme Court might be necessary, for a proper disposition of the business, and it was there held that the act attempted to delegate to the judicial branch of the government powers vested exclusively by the Constitution in the legislative branch of the government.

If it can be said that the act in question, by its provisions, in any manner limits or restricts the judicial arm of the government in properly exercising its discretion in discharging the duties imposed upon it by the Constitution, it is void and must fall, and a mere glance at section 3 (supra) of the measure is sufficient to convince one that its provisions are an impingement upon the above-quoted section of the Constitution.

In Riglander v. Star Company, 90 N. Y. Supp. 772, and affirmed by the Court of Appeals of New York, 73 N. E. 1131, this question was so thoroughly and ably treated there that we are inclined to adopt both the reasoning and language as being potently applicable here. It appears that the Legislature had enacted a statute providing that certain courts in the state of New York should give preference in the trial of certain cases, and when the courts held that the provisions of the act were not mandatory but discretionary, the Legislature sought to strengthen the law by an amendment providing that:

"The court or justice must designate a day certain, during that term, on which day the said cause shall then be heard: if there be two or more causes so designated for trial for the same day, the said causes shall be heard in order of their date of issue."

And the court there held that, inasmuch as the Legislature attempted to strip the courts of those discretionary powers that courts have exercised since their organization, it was violative of the Constitution providing for the separation of the three branches of the government.

Section 3 of the act before us provides that

an injunction action may be brought; that the defendant must answer within ten days, "and the district court shall try the case within ten days thereafter, which trial may be had in chambers if the court be not then in session, and in any county in the judicial district, and upon a trial the court shall render judgment. * * * "

It further provides that an appeal may be taken to the Supreme Court within ten days from the date of judgment "and not thereafter, except for good cause shown the trial court may extend this time for a period not to exceed 20 days, and the Supreme Court shall determine the appeal at the earliest possible moment."

Then, the question here is, Can the courts be stripped of their discretionary powers guaranteed to them under the Constitution, by the legislative branch of the government, which in this instance is a vote of the people instead of an enactment of the Legislature?

No one will deny that the legislative arm of the government has the power to alter and regulate the procedure in both law and equity matters, but for it to attempt to compel the courts to give a hearing to a particular litigant at a particular time, to the absolute exclusion of others who may have an equal claim upon its attention, strikes a blow at the very foundation of constitutional government. The right to control its order of business and to so conduct the same that the rights of all litigants may properly be safeguarded, has always been recognized as inherent in courts, and to strip them of that authority would necessarily render them so impotent and useless as to leave little excuse for their existence, and place in the hands of the legislative branch of the state power and control never contemplated by the Constitution.

It takes no great exercise of the imagination to contemplate a condition arising herein it would be impossible for the district court to try a particular case within ten days after defendant had filed his answer, but that one or the other of the litigants would be entitled to a continuance, but under the provisions of this act, however meritorious an application for a continuance might be, it must be denied, and it is violative of the principles of constitutional government and repugnant to every sense of justice to say that the court shall require the litigant to go to trial within a specified time under the provisions of this act, where under the exact circumstances it would be reversible error to require another litigant to go to trial, and yet this is the practical effect of the provisions of the act before us.

The Supreme Court of the state of Ohio had this same question before it in Schario v. State, 138 N. E. 63. In that case it appears the Legislature had enacted a law requiring that when petition in error was filed in a certain class of cases they should be heard by the reviewing court "within not more than 30 court days after filing such petition in error." And in holding that the act was an invasion of the judicial powers of the state, the court used logic and language which so completely meets with our approval that we quote therefrom as follows:

"We come now to the major question directly involved under the statute, whether or not under our Constitution the legislative branch of the government had any right to limit the judicial branch of the government in respect to its hearing and determination of the various actions and proceedings within the court's jurisdiction. True, the general subject-matter of procedure by the parties to the cause, prescribing the manner of invoking the jurisdiction, the pleadings, and the time within which the jurisdiction shall be invoked, in short, the adjective law of a case, has always been regarded within the proper province of legislative action, yet the legislative branch of the government is without constitutional authority to limit the judicial branch of the government in respect to when it shall hear or determine any cause of action within its lawful jurisdiction.

"Whether or not justice is administered without 'denial or delay' is a matter for which the judges are answerable to the people, and not to the General Assembly of Ohio. Manifestly, when a case can be heard and determined by a court must necessarily depend very largely upon the court docket, the quantity of business submitted to the court, the nature, the importance, and the difficulties attending the just and legal solution of matters involved. It would be obviously unfair to the court, as well as unfair to other parties likewise interested in the early and expeditious determination of their causes, to require a court to suspend or delay equally important matters theretofore submitted to the court for its consideration and determination in order to give preference to the hearing and determination of some particular case or character of cases. At least that is a matter that should be most properly and wisely left to the sound discretion of the court.

"We hold, therefore, that a provision of law mandatory in its terms, intention, and character, requiring the court in the exercise of a jurisdiction duly conferred upon it to hear or determine a cause within 30 days

from the time within which it is filed in court, or submitted to the court, is an unreasonable and unconstitutional invasion of judicial power, and therefore void. The general principle is sustained in City of Zanesville v. Zanesville Telegraph & Telephone Co., 64 Ohio St. 67, 59 N. E. 781, 52 L. R. A. 150, 83 Am. St. Rep. 725, and Incorporated Village of Fairview v. Giffee, 73 Ohio St. 183, 76 N. E. 865."

In Pacific Telephone & Telegraph Co. v. Eshleman, 137 Pac. 1119, the Supreme Court of California, speaking through Mr. Justice Sloss, said:

"The courts of this state derive their powers and jurisdiction from the Constitution of the state. The constitutional jurisdiction can neither be restricted nor enlarged by legislative act. An attempt to take away from the courts judicial power conferred upon them by the Constitution, or to impose upon them judicial powers not granted or authorized to be granted by the Constitution, is void. This declaration is not only in accord with the decisions elsewhere * * * but has been held by this court from the early history of the state. * * * It is still the rule, except in so far as it may have been modified by changes in the Constitution itself." (Citing numerous authorities.)

It is contended that the provisions of the initiated measure under consideration providing that the cause must be tried within ten days and that the appeal must be taken within ten days, are not mandatory but merely directory, and as supporting such contention counsel cite Kinney v. Heatherington, 38 Okla. 74, 131 Pac. 1078, wherein this court held that section 5 of article 7 of the Constitution, providing that a written opinion shall be rendered in each case within six months after the cause has been submitted for decision, was directory and not mandatory. They also cite Hamilton v. International Bank, 114 Okla. 28, 242 Pac. 858. wherein this court had under consideration section 9799, Comp. Stats. 1921, requiring the county court to decide certain cases on appeal within 30 days, and held such provision to be merely directory. However, it was contended in these cases that when the court failed to dispose of the cases within the time prescribed they lost jurisdiction and the causes should be dismissed, and this court held that the court did not lose jurisdiction because of its failure to comply with that provision of law. No such question is presented in the instant case. In the latter case above cited the constitutionality of the act does not seem to have been raised.

In this connection, it might be pertinent to observe that for us to merely hold the provisions of the act under consideration directory would afford poor consolation, for it was doubtless the intention of those sponsoring this measure to provide a method for a speedy disposition of such matters, and to hold the provisions of the measure merely directory would enable the courts to take as much time as they saw fit to dispose of the questions presented, which would be no improvement over the method provided by the law as it existed before this measure was initiated.

It is further contended that the initiated measure is void for the reason that it attempts to confer upon the district court jurisdiction to try such causes in chambers, or in another county than the county where the action arose, that part of the measure reading as follows:

"Which trial may be had in chambers if the court be not then in session, and in any county in the judicial district."

Clearly this provision of the measure is violative of section 25 of article 7 of the Constitution of Oklahoma, which reads as follows:

"The terms of the district court shall be held at the county seat of the respective counties."

The question here involved was considered by this court in Ichoff v. Caldwell, 51 Okla. 217, 151 Pac. 860, wherein a motion had been filed to set aside a default judgment rendered in a cause pending in the district court of Canadian county. Oklahoma county forming a part of the same judicial district and the parties to the action and their attorneys all residing in Oklahoma county, it was agreed that the motion to vacate the the judgment should be taken up for hearing in Oklahoma City. It appears that the losing party was not satisfied with the finding and judgment of the court, and through other counsel not participating in such agreement appealed to this court, and in disposing of such appeal this court, in the second paragraph of the syllabus, said:

"Terms of the district court can be held only at the seat of government of the respective counties, and a purported order of such court made in a county other than that in which a cause is pending, is a nullity."

This opinion was cited and followed by this court in Wade v. Hope, 89 Okla. 64 213 Pac. 549, in the first paragraph of the syllabus of which this court used the following language:

"An order made by a district judge over ruling a motion for new trial while said judge is in a county other than that i

which the case is pending, is a nullity, and the parties cannot confer jurisdiction upon said judge by consent."

This rule seems to be supported very generously by the authorities. 15 C. J. 895-898.

In Wonacott v. Rice, 73 Pac. 661, the Supreme Court of Nevada had this question under consideration, wherein the Legislature passed an act providing for holding terms of the district court at a place other than the county seat, and that court held the act violative of the provision of the Constitution of Nevada, providing that:

"The terms of the district court shall be held at the county seats of their respective counties."

This question was also before the Supreme Court of Texas in Whitner v. Belknap, 34 S. W. 594, and it was there held that an act of the Texas Legislature providing for terms of the district court to be held at a place other than the county seat was in violation of the terms of the Texas Constitution, providing that a district judge "must hold the regular terms of his court at the county seat of each county in his district."

In Funk v. Carroll County, 64 N. W. 768, the Supreme Court of Iowa, in discussing a similar question, said:

"The danger to result from permitting the court, in the trial of cause * * * to leave the place provided by law for the trial, and go to another place, is very manifest. But, independent of questions of propriety, the law fixes the place for the holding of courts for trial, or determines how they are fixed, and when such places are left by the courts, as in this case, the authority of the court for the trial is not changed to the other place and the proceedings there are of no effect."

In connection with this question, and as a part thereof, there is also presented the contention that the provision of the measure directing that "trial may be had in chambers if the court be not then in session," is void, upon the grounds that the court has no jurisdiction or authority to try causes and render judgment except when the court is in session.

The judge's "chambers" is defined in 11 C. J. 228, as:

"The private room of a judge; the private room or office of a judge, where, for the convenience of parties, he hears such matters and transacts such business as a judge in vacation is authorized to hear, and which do not require a hearing by the judge sitting as a court; the office or private rooms of a

judge, where parties are heard and orders made in matters not required to be brought before the full court."

And at page 227, the same authority defines "chamber business" as:

"A term applied to all such judicial business as may properly be transacted by a judge at his chambers or elsewhere, as distinguished from such as must be done by the court in session; * * * all business done out of court by the judge."

This court had this question before it in Dunn v. Carrier, 40 Okla. 214, 135 Pac. 337. In that case the district judge of Garvin county rendered judgment in vacation, and this court, following a long list of authorities therein cited, held that the judgment was void, its language in the first paragraph of the syllabus being as follows:

"All judgments, except where specially provided for by statute, must be rendered while the court is in session in the county where the case is pending; and a judgment rendered by the judge in vacation of the court and in another county is void and jurisdiction cannot be conferred by agreement."

In Hoskins v. Baxter, 66 N. W. 969, the Supreme Court of Minnesota had under consideration a question similar to the one before us, when it said:

"The power and jurisdiction of a judge at chambers are precisely those of a judge in vacation. The term 'chambers' means the private room or office of a judge, where, for the convenience of the parties, he hears such matters and transacts such business as a judge in vacation is authorized to hear, and which do not require a hearing by the judge sitting as a court. The chambers of a judge are not an element of jurisdiction, but of convenience. For the purposes of jurisdiction, the chambers of a judge are wherever he is found within his district, and any business he is authorized to do as a judge in vacation is chambers business * * * A judge in vacation has no power to hear and determine any matter which the court only can hear. When, under the statute, he hears such matter in vacation, he sits as a court, and not as a judge in vacation or at chambers."

This question was under consideration by the Supreme Court of the territory of Oklahoma, when in American Fire Insurance Co. v. Pappe, 4 Okla. 110, 43 Pac. 1085, it said:

"It is, we think, quite clear, both in reason and authority, that a judgment of the character appealed from, if rendered at a time when the court was not in session, is not binding upon the parties. * * * There

is a well-defined distinction between the act of a judge and the act of a court. The law has placed the jurisdiction to pronounce judgment in a court, not in a judge."

It will be observed that this court said in Dunn v. Carrier, supra, that such judgments were void "except where specially provided for by statute." To be sure, there is an effort to provide for the legality of such judgments in the initiated measure before us, but such procedure as this measure attempts to provide is so opposed to the great weight of authority and is so repugnant to the orderly procedure in courts of justice that we are not willing to set aside these fundamental rules and breathe the breath of life into and give sanction to the doctrine that a judge, in chambers, or in vacation, may render a judgment affecting the property rights of litigants and give to it the same sanctity and binding force as judgments rendered in conformity to fundamental and long-established procedure.

It is contended by counsel for plaintiff in error that, even though portions of the initiated measure be declared unconstitutional. the portions thereof found not in conflict with the Constitution should be allowed to stand citing Bishop on Statutory Construction, paragraph 34; State v. Coyle. 7 Okla. Cr 50, 122 Pac. 243; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159.

We agree with the contention. and the law is well-settled, that where portions of an act were found to be violative of the provisions of the Constitution, those portions of the act not so violating the Constitution must stand. This rule, however, is subject to certain and well-defined exceptions. Where one part of an act is found to be unconstitutional, the courts will not uphold the remainder of the act unless it can be determined that the portions of the act are so separate and independent of each other as to enable the court to determine for itself that the law-making power of the state would have adopted the remaining portion of the measure had it known that the particular provision complained of was beyond its powers. In other words, if one part of a statute is so independent of another that the court can presume the law-making power—whether by initiative petition or by act of the Legislature—would have adopted the one provision without the other being contained therein, then the courts will uphold the valid portions of such statute, but where it is obvious that the law-making power did not intend that any part of an act should have force and effect unless the whole act

is valid, then if one portion falls, the whole act must fall.

This subject was so thoroughly discussed by Mr. Justice Sharp in Comanche Light & Power Co. v. Nix, 53 Okla. 220, 156 Pac. 293, and the position taken so well fortified with the authorities therein cited, that we consider it unnecessary to go further than to cite the authorities therein cited and quote from the opinion of this court therein as follows:

"It is fundamental that one part of a statute cannot be declared void and leave any other part in force, unless the statute is so composite, consisting of such separable parts that, when the void part is eliminated, another living, tangible part remains, capable, by its own terms, of being carried into effect, consistently with the intent of the Legislature which enacted it in connection with the void part. * * * If the court can see and say that the act, in the form in which it is left with the obnoxious portions excised, is still such an act as it may be presumed that the Legislature would have passed had it known that certain provisions were void, the remainder, under well-settled rules of construction, may stand. * * * On the other hand, if it is obvious that the Legislature did not intend that any part should have effect unless the whole, including the part wholly void. should operate, then holding a part void invalidates the entire statute."

We reach the conclusion, therefore, for the reasons herein given, that section 3 of the initiated measure is in direct conflict with the provisions of the Constitution, and for that reason, void, and having reached that conclusion, the inquiry naturally arises if section 3 is stricken down, what effect will that have upon sections 1, 2, 4, and 5 and a careful examination of the whole act readily forces us to the inevitable conclusion that, with section 3 eliminated. paraphrasing the language of a former distinguished member of this court, the remaining sections would be dead limbs upon the legislative tree. Section 3 is that part of the measure intended to motivate the whole measure, without which the act would be as useless as an automobile with the motor removed, standing as a useless piece of machinery, or like the human body with the heart removed, the remaining parts being wholly incapable of functioning.

However great may be the demand of necessity therefor, however ardently we may wish to see laws enacted which will facilitate the assessment and collection of taxes we cannot uphold this measure without de

ing violence to fundamental, well-recognized, and long-established rules of law.

The judgment of the district court is therefore affirmed.

BRANSON, V. C. J., and MASON, HARRISON, and CLARK, JJ., concur. NICHOLSON, C. J., and LESTER, J., concur in conclusion. HUNT and RILEY, JJ., dissent.

HUNT, J. (dissenting). The opinion of the majority herein finds fault with only one section, to wit, section 3 of the initiative measure here in question, and reaches the conclusion that said section 3 is unconstitutional and void for two reasons:

First. That that portion of the section providing "that the district court shall try the case within ten days thereafter" is an attempt by the legislative branch of the government to usurp the powers conferred upon the judicial branch of the government by the Constitution and to limit or abolish judicial discretion belonging to the court.

Second. That portion of said section providing that district judges may hear and determine cases and render judgment in another county than the county where such case is pending is in conflict with section 25, article 7, of the Constitution of Oklahoma, providing "that the terms of the district court shall be held at the county seat of the respective counties."

I am unable to agree with the first proposition, for the reason that I am thoroughly convinced that the provision as to trial within ten days is not mandatory, but directory only, and in no way usurps any of the prerogatives of the judiciary or attempts to limit or control the judicial discretion belonging to the courts. There is no provision in the act to the effect that if a case is not tried within the ten-day period, the court loses jurisdiction, and it necessarily follows that, if for good cause shown, in the sound discretion of the court, the trial is delayed beyond the ten-day period, the court may proceed with same in the due and regular course of business and settle and determine the rights of the parties. It therefore amounts to a direction only as to procedure, and while, as stated above, not mandatory, it will be presumed the district courts of the state will follow it so far as possible and thus accomplish the purposes of the measure and determine the validity of the tax levies before the taxes are spread f the tax levies before the taxes are spread itizen will be protected against any illegal vy instead of only those who are able to

contest them in separate suits as now, and a multiplicity of suits avoided.

This proposition, in our opinion, has heretofore been passed on by this court in Kinney v. Heatherington, 38 Okla. 74, 131 Pac. 1078, where the provision of the Constitution providing that this court shall render a written opinion in each case within six months after said case has been submitted for a decision was under consideration, and in Hamilton, County Treasurer, et al. v. International Bank of Haskell, 114 Okla. 28, 242 Pac. 858. wherein section 9799, C. O. S. 1921, providing that certain appeals to the county court should be given precedence and tried within 30 days, was under consideration, and in each of those cases it was held that provisions of this character are merely directory and enacted for the purpose of expediting trials, and that in the absence of a specific provision to the effect that jurisdiction was lost in the event same was not disposed of within the time mentioned jurisdiction was retained and the case could be tried and disposed of after the time mentioned.

I am therefore of the opinion, under the authority of these cases, that this portion of the act can be and should be upheld.

As to the next proposition, I am inclined to agree that that portion of the act providing for a trial in another county than the county where such case is pending and by the judge in chambers when the court is not in session, is in conflict with the Constitution, and therefore void. But in this connection I am further of the opinion that this portion of the measure is properly separable from the rest of the act, and that with this eliminated, the remainder of the act would stand and carry into effect the intention of the people in enacting the measure.

I agree with syllabus 3 of the opinion, but since the only effect of eliminating the portion above referred to would be to require all cases filed under this measure to be tried in the county where filed and by the court while in session, it becomes apparent that the same is separable from the rest of the measure, and so eliminating same and applying the law as announced in syllabus 3 of the opinion, which is amply supported by authorities. I am clearly of the opinion that the remainder of the act can be and should be upheld.

This measure was designed to correct an admitted evil, and if allowed to stand, would, in our opinion, accomplish that pur-

pose, and having been initiated and enacted into law by the people of this state, we feel that it should be given a liberal rather than a strict technical construction, and should be upheld if possible to do so without doing violence to the provisions of the Constitution.

It is well settled that every reasonable presumption will be made in favor of validity of laws enacted by the people or by the Legislature, and' that all reasonable doubts as to the constitutionality of the statute will be resolved in favor of its validity. Ex parte Young, 209 U. S. 123. 28 Sup. Ct. 441; 12 Corpus Juris, 795. While an invasion of the rights and prerogatives of the judicial branch of the government by the legislative branch cannot and will not be sanctioned by the courts, yet the courts should just as scrupulously refrain from invading the rights or usurping any of the prerogatives of the legislative branch of the government, and should therefore be slow to strike down a measure enacted into law, unless it clearly appears that same is violative of the plain provisions of the Constitution. As to the measure under consideration, it does not so appear to the writer, and for these reasons, and upon authority of the cases herein cited, I feel impelled to dissent from the conclusion of the majority.

I am authorized to state that Mr. Justice RILEY concurs in the views herein expressed.

Note—See under (1) 12 C. J. p. 828, §296. (2) 15 C. J. pp. 896, §264; pp. 897, 898, §265. (3) 36 Cyc. pp. 976, 977, 978; 6 R. C. L. p. 121 et seq.; 2 R. C. L. Supp. p. 33; 4 R. C. L. Supp. p. 384; 5 R. C. L. Supp. p. 322; 6 R. C. L. Supp. p. 357.