**STATE of Tennessee, Appellee,**

v.

**Stephen DRAKE and David Frey, On the Intervening Petitions of Gillett Broadcasting of Tennessee, Inc., Channel Five Television, Inc., Tennessean Newspapers, Inc. and Sigma Delta Chi, Professional Journalism Society, Intervenors-Appellants.**

Supreme Court of Tennessee, at Nashville.

Dec. 2, 1985.

W. J. Michael Cody, Atty. Gen. and Reporter, Jerry L. Smith, Deputy Atty. Gen., Nashville, for appellee.

Stephen K. Rush, Farris, Warfield & Kanaday, Nashville, for Gillette Broadcasting.

Jon D. Ross, Neal & Harwell, Nashville, for Channel Five Television.

Alfred H. Knight, Willis & Knight, August C. Winter, Willis & Knight, Nashville, for Tennessean Newspapers and Sigma Delta Chi.

FONES, Justice.

We granted the Rule 11 application of the media entities listed in the style of this criminal case as intervenors to consider, to the extent we deem appropriate, the right of the public and the media to attend pre-trial and trial proceedings in criminal cases, their right to intervene and be heard in opposition to motions for closure, and the procedure for intervention in the trial and appellate courts.

Defendant Frey moved the trial court to exclude the public and the media from pre-trial hearings and prohibit communication of information about the proceedings to the public and the media until the jury was impanelled and sequestered. That motion was heard on October 4, 1982, and was not opposed by the State or by co-defendant Drake. A Clarksville *Leaf Chronicle* reporter was present in the courtroom, ob-

jected to the closure motion and asked the trial judge to delay his ruling and allow the newspaper's lawyer to appear and be heard. The trial judge declined and ordered that all pre-trial proceedings be closed, all motions, orders and transcripts sealed by the clerk and prohibited court personnel, lawyers, witnesses, etc., from communicating information about the proceedings to the public or the media.

No proof was offered in support of defendant Frey's motion for closure and no findings of fact were made by the trial judge. The order merely recited the conclusion that defendant's constitutional right to a fair trial rendered the closure provisions necessary.

Petitions seeking to intervene for the purpose of having the court reconsider its closure order were filed by the intervenors. A hearing on those petitions was held on November 1, 1982, but no ruling was handed down at that time. On December 20, 1982, the trial court ruled that the intervenors had a legitimate interest to assert, granted their motions to intervene, and modified the original closure order to allow the voir dire of the jury to be open to the public and the press, but otherwise affirmed the closure order.

Intervenors appealed to the Court of Appeals on the theory that access to pre-trial proceedings is a civil matter and that they were civil parties. The Court of Appeals transferred the case to the Court of Criminal Appeals. We concur in that action because the proceeding is clearly one "arising out of a criminal case," as contemplated in T.C.A. § 16–5–108(a)(2).

The Court of Criminal Appeals held that other jurisdictions were about equally divided between those which allow intervention at the trial level and those that require intervenors to seek relief through "some mandate from higher judicial authority." The intermediate court rejected intervention at the trial level because "such a practice can only interfere with the central question at issue which is the guilt or innocence of the accused." Nevertheless, that

Court held that if members of the press or the public entertained a "legitimate belief" that a trial judge had failed to give proper consideration to the competing First Amendment right to attend criminal trials with a defendant's constitutional right to a fair trial, an avenue must be open to test the validity of that action. The common law writ of certiorari and/or mandamus was held to be the "most efficacious route to attain appellate assistance."

■ In *State v. Willoughby*, 594 S.W.2d 388 (Tenn.1980), we held that all of the grounds for relief pursuant to the common law writ of certiorari, as articulated in *State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978), are now available under Rule 10 T.R.A.P. Mandamus would be inappropriate in this jurisdiction. Without intervention in the trial court, a hearing and an adjudication of why one competing interest outweighed the other, the proceeding in the Court of Criminal Appeals or this Court would be an original proceeding and neither court has original jurisdiction of mandamus except in aid of the respective appellate jurisdiction of those courts. Also, the office of mandamus is to execute, not adjudicate and is not appropriate where there is no clearly established right asserted that invokes the performance of a ministerial duty. *See Moore v. Chandler*, 675 S.W.2d 153 (Tenn.1984).

### I.

Whatever uncertainty existed with respect to the position of the United States Supreme Court on the competing interests involved in closing pre-trial hearings in criminal cases has been clarified in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In *Waller*, defendant was asserting his Sixth Amendment right to a public trial in opposition to the State's motion to close a pre-trial suppression hearing. Prior to focusing on that specific issue, Mr. Justice Powell, writing for the Court, reviewed recent developments in this area of the law as follows:

In several recent cases, the Court found that the press and public have a qualified First Amendment right to attend a criminal trial. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). We also have extended that right not only to the trial as such but also to the *voir dire* proceeding in which the jury is selected. *Press-Enterprise Co. v. Superior Court*, 464 U.S. [501], 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). Moreover, in an earlier case in this line, *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), we considered whether this right extends to a pretrial suppression hearing. While the Court's opinion did not reach the question, *id.*, at 392, 99 S.Ct., at 2911, a majority of the Justices concluded that the public had a qualified constitutional right to attend such hearings, *id.*, at 397, 99 S.Ct., at 2914 (POWELL, J., concurring) (basing right on First Amendment); *id.*, at 406, 99 S.Ct., at 2919 (BLACKMUN, J., joined by BRENNAN, WHITE, and MARSHALL, JJ., dissenting in part) (basing right on Sixth Amendment).

In each of these cases the Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care. We stated the applicable rules in *Press-Enterprise:*

"The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." 464 U.S., at [506], 104 S.Ct., at 824.

Accord, *Globe Newspaper Co., supra* 457 U.S., at 606–607, 102 S.Ct., at 2620–2621; *Richmond Newspapers, supra* 448 U.S., at 580–581, 100 S.Ct., at 2829–2830 (opinion of BURGER, C.J.); *Gannett, supra* 443 U.S., at 392–393, 99 S.Ct., at 2911–2912 *(semble)*; *id.*, at 400–401, 99 S.Ct., at 2916–2917 (POWELL, J., concurring); *id.*, at 440–446, 99 S.Ct., at 2936–2939 (BLACKMUN, J., dissenting in part). *Id.* at 2214–15.

Later in the opinion, the Court restated the substance of the rule from *Press-Enterprise* as follows:

[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. *Id.* at 2216.

These are the principles that must be applied in Tennessee when a closure or other restrictive order is sought.

## II.

A procedure must be provided for the adjudication of the competing rights discussed herein when closure orders are sought.

Typically a motion for a closure order will be made by a defendant, will be unopposed by the State, and if any evidence or advocacy is offered in opposition, it will likely be on behalf of media entities.

■ However, even if no voice is heard in opposition to a motion for closure, it is the duty of the trial judge to require the movant to advance an overriding interest that is likely to be prejudiced, consider reasonable alternatives to closing the proceedings, tailor any closure order so that it is no broader than necessary to protect that interest, and make findings adequate to support the closure.

■ A motion for a closure order must be made in writing, specifying the basis for and the extent of closure or other restrictions sought. Such motions shall be given an expedited hearing by the trial judge, but cannot be heard until the motion for closure has been on file in the clerk's office for a period of at least three days. Interested members of the public and the media may intervene and be heard in opposition to the motion. Immediately upon setting the motion for hearing, the date and time thereof shall be entered on the clerk's docket of the case in the clerk's office and no additional notice need be given.

■ At the hearing of the motion for a closure order and after first ascertaining who the intervening parties are, if any, the trial judge may order such portion of the hearing closed as he finds necessary to avoid disclosure of prejudicial material.

■ A transcript of the proceedings of the hearing on a motion for closure and of any subsequent pre-trial or trial proceedings that are closed to the public shall be made available to the public at the earliest time consistent with the preservation of the interests that require the closure and also available for the limited purpose of appeal as provided herein.

■ Upon granting an order of closure the trial judge shall articulate the specific facts upon which he has based a finding that closure is essential to preserve the moving party's interest and his finding that no alternatives to closure will adequately protect that interest. A decision on closure motions must be rendered promptly.

■ All orders of closure shall be served upon all intervening parties at least seven days before any proceedings are heard pursuant to the closure order so the intervening parties may not be denied the opportunity of prompt appellate review.

■ Appellate review shall be available to intervening parties as provided in Rule 10, T.R.A.P. from the trial court to the Court of Criminal Appeals, and, if necessary, to this Court. Such review is appropriate because if the trial judge is in error in issuing the closure order the intervening

party will lose a right or interest that may never be recaptured. *See State v. Willoughby, supra.*

### III.

 We decline the request of the intervenors that we consider the merits of the trial judge's closure order and find errors therein. The closure order has expired, the case has been tried and that issue is moot. We have dealt with the substantive and procedural law applicable to motions for closure or restrictive orders in criminal trials and pre-trial proceedings because those issues are "capable of repetition yet evading review." *See Gannett Co. Inc. v. DePasquale, supra.*

The application of the intervenors is sustained to the extent herein provided. Costs are assessed one-half to intervenors and one-half to the State of Tennessee.

COOPER, C.J., BROCK, HARBISON and DROWOTA, JJ., concur.