770 P.2d 320

**Jacob Edgar WIDEMAN, Petitioner,**

v.

**The Honorable William F. GARBARINO, Judge of the Coconino County Superior Court, State of Arizona; and John Verkamp, Coconino County Attorney, real party in interest, Respondents.**

No. CV–86–0611–SA.

Supreme Court of Arizona,
En Banc.

Feb. 2, 1989.

Allen, Kimerer & LaVelle by Michael D. Kimerer, Garth V. Smith, Suzanne K. Ticknor, Phoenix, for petitioner.

John Verkamp, Coconino Co. Atty. by Jon W. Thompson, Deputy Coconino Co. Atty., Flagstaff, for respondents.

Brown & Bain, P.A. by Paul F. Eckstein, David J. Bodney, Daniel C. Barr, Phoenix, for amici curiae Arizona Daily Sun/First Amendment Coalition of Arizona, Inc.

Julius LeVonne Chambers, Charles Stephen Ralston, New York City, for amicus curiae NAACP Legal Defense and Educational Fund, Inc.

WILLIAM A. HOLOHAN, Justice (Retired).

The petitioner, a juvenile, filed a special action in this court to prevent the respondent judge from allowing the news media and public to attend a transfer hearing [1] in

---

**1.** A transfer hearing is a proceeding in juvenile court to determine whether that court should

juvenile court. We ordered a stay of proceedings until oral argument could be heard on the petition. After argument, we vacated the stay order, denied the relief sought in the petition, and ordered that the proceedings in juvenile court "proceed in the manner determined by the respondent judge." We indicated that an opinion would follow in due course. This is that opinion.

The relevant facts are that the petitioner was 16 years old when he was arrested for murder and theft. The Coconino county attorney filed a petition in juvenile court asking that the petitioner be transferred from juvenile court for prosecution as an adult in the superior court. Prior to the date set for the transfer hearing, members of the news media requested permission from the respondent judge to attend the hearing. The respondent judge, over the objections of the petitioner, entered an order opening the transfer hearing to the public. The petitioner filed the present special action with this court to compel the respondent judge to close the hearing.

We accepted jurisdiction of the petition for special action to decide whether the Rules of Procedure for Juvenile Court, giving the juvenile court discretion to exclude the general public from juvenile hearings, is in conflict with art. 6, § 15 of the Arizona Constitution requiring the holding of juvenile proceedings "in chambers."

## IN CHAMBERS

Article 6, § 15 of the Arizona Constitution provides, in part:

> The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations *in chambers* for all such children concerning whom pro-

ceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children.

(Emphasis added.) Petitioner argues that the phrase "in chambers" means that proceedings in juvenile court are not open to either the media or the public without the consent of the juvenile. He contends that Rule 19,[2] Juv.Ct.Rules of Proc., 17B A.R.S., must be interpreted to maintain the privacy mandated by the constitution.

Petitioner contends that his construction of the phrase "in chambers" is supported by case law and Arizona constitutional history.

## I

Petitioner points out that the term "in camera," a synonym for "in chambers," is defined as follows:

> In chambers; in private. A cause is said to be heard *in camera* either when the hearing is had before the judge in his private chambers or when all spectators are excluded from the courtroom.

Black's Law Dictionary 684 (5th ed.1979). He points out that most cases in which the terms "chambers" or "in chambers" have been defined, refer to the "private" rooms or offices of a judge or the courtroom when not conducting business in open court or regular session. *See* 14 C.J.S. *Chamber*, at 351 (1939). From these case definitions, the petitioner concludes that hearings "in chambers" must be private. A California case cited by both parties defines proceedings "in chambers" simply as hearings conducted by a single judge in his "office" as opposed to formal sessions of the court. *Von Schmidt v. Widber*, 99 Cal. 511, 513, 34 P. 109, 110 (1893). The court explains that as judicial activity increased in early England, the practice developed of hearing subsidiary matters "out of court" rather

retain jurisdiction over a child accused of crime or transfer the child to the superior court for criminal prosecution. *See* Rule 14, Juv.Ct. Rules of Proc., 17B A.R.S.

**2.** Rule 19, Juve.Ct.Rules of Proc., 17B A.R.S., reads in part:

In any hearing pursuant to these rules, the general public may be excluded and only such persons admitted as have a direct interest in the case.

than during the fixed terms of court. *Id.* The court explained:

> [T]he practice arose of hearing and disposing of such matters at certain hours during "term time" while the court was not in formal session, and subsequently certain hours of each day were fixed, at which one of the judges would hear these matters while the court was actually in session. The motions and orders thus made were said to be heard and disposed of "at chambers," for the reason that they were heard by the judge at his chambers, rather than in the court room, but the term "chambers" finally became extended so as to include any place, either in or out of the court room, at which a judge may hear applications or make orders while the court is not in session, in matters pending in that court. *The distinction between those matters which could be heard in court and those which could be heard at chambers arose from convenience, rather than from any other cause, but they were limited to the subsidiary and incidental steps in practice and procedure,* leaving to the court the judicial determination of the issues presented by the pleadings, and which formed a part of the record.

*Id.* (Emphasis added.)

Furthermore, although most of the cases cited by petitioner that have defined the term "in chambers" as referring to a judge's private chambers or office, none of them conclude that the public or press must necessarily be excluded from proceedings held in chambers. *See, e.g., Kirby v. Chicago, Rock Island & Pac. Ry. Co.*, 51 Co. 82, 86–87, 116 P. 150, 151 (1911); *Chapman v. Chattooga Oil Mill Co.*, 22 Ga.App. 446, 447, 96 S.E. 579, 580 (1918); *Atchison, T. & S.F. Ry. v. Long*, 122 Okl. 86, 91, 251 P. 486, 491 (1926).

Petitioner's cases do not support his contention that "in chambers" is synonymous with "in private." The most that can be said for the cited authorities is that they indicate that the judge has control of those admitted to chambers. In contrast to chambers, the courtroom is open to the public, and, generally, it cannot be closed when a matter is being tried. *See State Bar v. Superior Court*, 113 Ariz. 440, 556 P.2d 315 (1976). We reject the notion that the use of the phrase "in chambers" necessarily means that the public must be excluded from proceedings held in chambers.

## II

The petitioner's second contention is that there is an historical basis for concluding that the phrase "in chambers" was used by the framers of the state constitution to mean "in private."

Petitioner points out that the framers of the state constitution, in adopting the precursor to Article 6, § 15, made changes from the existing law about juvenile courts in effect before statehood, which indicate that they intended "in chambers" to mean "in private." Prior to statehood, Chapter 78 of the Territorial Session Laws of 1907 addressed juvenile court proceedings. It was described as an Act "[d]efining the Powers of the Several District Courts of the Territory of Arizona in Reference to the Care, Treatment and Control of Dependent, Neglected, Incorrigible and Delinquent Children. . . ." Chapter 78, § 1 provided in part:

> The powers of the District Courts, as provided by this Act, may be exercised by any Judge of such Court *in open Court or at chambers* and at any place within said judicial district, and all sessions of said Court for such purposes shall be held separate and apart from the session of the Court held for the purpose of its general criminal business, and the records of the proceedings of such court for such purposes shall be kept in a docket separate from all other proceedings of said Court.

Territorial Session Laws of 1907, Ch. 78, § 1, at 144 (emphasis added). Under the foregoing statute juvenile proceedings could be held either in open court or in chambers.

The Constitutional Convention in 1910

adopted art. 6, § 6 [3] which is substantially the same as art. 6, § 15.[4] Then, as now, the juvenile court judge was required to hold examinations "in chambers."

Petitioner contends that since delegates to the Constitutional Convention were apparently aware of provisions covering juveniles in the territorial session laws,[5] the failure to include a provision in art. 6, § 6 permitting juvenile proceedings to be held in "open court," means that the framers intended that all juvenile court proceedings were to be held in chambers, or in private.

We agree with petitioner that the use of the phrase "in chambers" indicated an intention by the framers that juveniles not be tried in open court. The preference for juvenile proceedings to be conducted "in chambers" does not, however, support the conclusion that such proceedings were to be private or closed to others. The framers of the state constitution also provided: "Justice in all cases shall be administered openly, and without unnecessary delay." Arizona Const. art. 2, § 11. The administration of justice openly and closed hearings are inconsistent concepts.

The term "chambers," as used at the time the state constitution was drafted, did not indicate that the term was some way synonymous with private. On the contrary, many matters generally not considered private were conducted "at chambers." The Revised Statutes of 1901 specifically provided that the district court could conduct a number of matters "at chambers."

Any judge of the district court may sit at chambers, at any time and place, with-

in his judicial district, and while so sitting shall have the power:

1. To grant, dissolve, or modify temporary injunctions.

2. To hear and determine applications for writs of mandamus, certiorari, injunction and habeas corpus.

3. To discharge such other duties, or to exercise such other powers, as may be conferred upon a judge in contradistinction to a court.

Civil Code, 1901, § 1229. A similar provision is found in the Civil Code, 1913, § 344. The term "in chambers" in the constitution, viewed in the light of contemporary usage, did not have the meaning contended by petitioner.

We believe that the framers made special provisions for juvenile cases to be conducted in a less formal atmosphere under the relaxed procedures in use prior to *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). There is nothing in the contemporary history or the convention debates which indicates any desire by the framers of the constitution to have juvenile proceedings conducted "in private." By designation of the judge's chambers as the place to hold such hearings, the framers left to the judges the authority and discretion to admit such persons to their chambers as they wished.

Rule 19 recognizes and confirms the power of a juvenile court judge to control the persons to be admitted to the judge's chambers for a juvenile proceeding. The rule is in harmony with the state constitution, and we find nothing in the current legislative acts which would indicate any

---

**3.** Section 6 of Article 6 was revised by the initiative measure approved in 1960 which replaced the original Article 6.

**4.** Article 6, § 6 provided in part:

The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges of said courts must hold examinations in chambers of all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such

children, and shall have the power, in their discretion, to suspend criminal prosecution for any offenses that may have been committed by such children.

**5.** The petitioner apparently drew his conclusion on the above point because certain delegates to the Constitutional Convention expressly referred to the Territorial Session Laws during floor debates on age limits for juvenile jurisdiction. *See Journal of the Constitutional Convention of Arizona* at 443–44 (1910) (discussing Proposition 140).

policy contrary to the provisions of the rule.

### Judicial Discretion

 The final matter to be considered is whether the respondent judge abused his discretion. From the record presented to us we find no showing of an abuse of discretion in the actions of the respondent judge. There is no showing that the juvenile would be deprived of a fair hearing or otherwise deprived of a constitutional right.

Prior to the scheduled hearing in juvenile court, the alleged events involved in the case had been reported by the news media. As so often occurs, the news reports dealt with the alleged circumstances of the crime and the background of the victim. A closed juvenile hearing does nothing to bury the news accounts. On occasion, the hearing in juvenile court provides the first information about the history and emotional condition of the juvenile, information which can provide some insight into the cause of the juvenile's actions.

Although the juvenile court must be concerned with the rehabilitation of youthful offenders, the public has an interest in knowing how a juvenile court performs that function. There is a legitimate concern by people to know that their courts are operating fairly and effectively. Closed or private hearings not only defeat the public's ability to gain such information, but they also tend to create suspicion about the court's operation. The administration of justice openly can dispel the public's fears and demonstrate that the courts apply the law fairly and impartially.

Rule 19 leaves the balancing of society's interest and the needs of the juvenile to the discretion of the juvenile judge. We will not interfere in the juvenile court's decision unless it is clearly an abuse of that discretion. As noted earlier, we find no abuse in the discretionary decision of the respondent judge to admit the news media to the transfer hearing.

**RELIEF DENIED.**

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

MOELLER, J., did not participate in the determination of this matter.