STATE of Tennessee, Appellee,

v.

Shawnda Lee JAMES, Appellee,

v.

THE TENNESSEAN, Intervenor–
Appellant.

No. 01S01–9505–JV–00069.

Supreme Court of Tennessee,
at Nashville.

June 26, 1995.

Charles W. Burson, Atty. Gen. and Reporter, Michael E. Moore, Sol. Gen., Gordon W. Smith, Associate Sol. Gen., Nashville, for the State.

Alfred H. Knight and Alan D. Johnson, Willis & Knight, Nashville, for intervenor, The Tennessean.

Elizabeth B. Marney, Nashville, for amicus curiae, The Nashville Banner.

Robert D. Massey, Pulaski, for defendant Shawnda Lee James.

Gregory D. Smith and Rebecca Freeman, Nashville, for amicus curiae, the Tennessee Ass'n of Criminal Defense Lawyers.

## OPINION

DROWOTA, Justice.

The issue presented in this extraordinary appeal is whether the Juvenile Court for Giles County erred in ruling that all further proceedings before the juvenile court should be closed to the public and press. For reasons hereinafter stated, we vacate the judgment of the juvenile court and remand the case for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

On March 6, 1995, separate petitions were filed in the Juvenile Court for Giles County charging fourteen-year-old Shawnda Lee James with first degree murder and especially aggravated kidnapping. Both of these acts were allegedly committed on March 5, 1995. On March 10, 1995, the juvenile court ordered that Shawnda Lee James be temporarily placed in the Rutherford County juvenile detention center. The same order stated that a hearing would be conducted on March

15, 1995, to determine the further placement of the juvenile.

The Tennessean, a division of Gannett Satellite Information Network, Inc., filed a motion with the juvenile court on March 14, 1995. The Tennessean's motion included the following:

> In the present case, the District Attorney has petitioned this Court to transfer the minor to Criminal Court to be tried as an adult. The movant understands that this Court intends to close all future hearings to the press and public. *The Tennessean* has a right to attend this and other hearings pursuant to the First Amendment of the United States Constitution and Article 1, Section 19 of the Constitution of the State of Tennessee. It is therefore respectfully requested that *The Tennessean* be allowed to intervene in this action for the purpose of requesting that these hearings be open, and that this court open all future hearings to the public.

On March 22, 1995, the juvenile court entered an order stating that a hearing on The Tennessean's motion had been conducted on March 15, 1995, and granting The Tennessean's unopposed motion to intervene. This order also included the following:

> The Court heard argument on behalf of *The Tennessean* in favor of opening all court proceedings, and argument on behalf of the State of Tennessee and a minor defendant seeking closure of court proceedings and opposing *The Tennessean's* motion. After considering argument of counsel, and for the reasons stated at the hearing, the Court finds that the motion to open all court proceedings in this case is not well taken and shall be denied.

There is no transcript of the March 15, 1995, hearing conducted by the juvenile court.

The Tennessean filed an application under Rule 10, Tennessee Rules of Appellate Procedure, for an extraordinary appeal of the trial court's order denying The Tennessean's motion to open further proceedings. The Rule 10 application was denied by the Court of Appeals on April 13, 1995. The Tennessean applied to this Court on May 9, 1995, for review of the Court of Appeals' order denying its Rule 10 application. By an order entered on May 23, 1995, this Court granted The Tennessean's Rule 10 application and set oral argument for June 6, 1995. We also ordered that all proceedings in the Juvenile Court for Giles County be stayed pending further orders of this Court.

## ANALYSIS

In *State v. Drake,* 701 S.W.2d 604 (Tenn. 1985), an issue similar to the one in this case was presented to the Supreme Court. The Court summarized the matters before it as follows:

> We granted the Rule 11 application of the media entities listed in the style of this criminal case as intervenors to consider, to the extent we deem appropriate, the right of the public and the media to attend pretrial and trial proceedings in criminal cases, their right to intervene and be heard in opposition to motions for closure, and the procedure for intervention in the trial and the appellate courts.

*Id.* at 606.

In addition to describing procedures for hearing closure motions in criminal proceedings and for appellate review under Rule 10 of orders involving closure of criminal proceedings, the Court announced the principles that must be applied when a party seeks to close such proceedings. Relying on the United States Supreme Court decisions in *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), both of which were criminal cases involving competing interests under the First and Sixth Amendments to the United States Constitution, we adopted the following rule when a closure or other restriction order is sought:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be

no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. (Citation omitted.)

*Drake,* 701 S.W.2d at 608.

The United States Supreme Court has not yet addressed how the principles stated by it with respect to closing criminal proceedings would apply in the context of juvenile proceedings. However, the federal courts have recognized that additional interests are involved in juvenile proceedings. For example, in *In re J.D.C.,* 594 A.2d 70 (D.C.App.1991), a juvenile delinquency proceeding, the District of Columbia Court of Appeals stated:

> The [United States] Supreme Court has remarked that all fifty states have statutes which provide in some way for confidentiality of juvenile proceedings. *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 105, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979). 'It is the law's policy to hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past.' *In re: Gault,* 387 U.S. 1, 24, 87 S.Ct. 1428, 1442, 18 L.Ed.2d 527 (1967).

*Id.* at 75. In another juvenile delinquency proceeding, the Third Circuit Court of Appeals in *United States v. A.D.,* 28 F.3d 1353 (3rd Cir.1994), observed as follows:

> Recognizing the special sensitivity of information regarding juveniles and the impact that public dissemination of such information may have on the youths involved, states have devised a number of different approaches to accommodate these concerns. For the most part, these have not involved blanket prohibitions of access. *See* Note, *The Public Right of Access to Juvenile Delinquency Hearings,* 81 Mich. L.Rev. 1540, 1540 n. 3 (1983). It remains true, as the Supreme Court observed in 1967, that '[d]isclosure of court records is discretionary with the judge in most jurisdictions.' *Gault,* 387 U.S. at 24, 87 S.Ct. at 1442.

*Id.* at 1357.

State courts have also addressed such issues. These cases have involved varying procedural postures, varying statutes and rules governing juvenile matters in respective jurisdictions, and varying constitutional issues. The cases have in common an approach that involves balancing the interest of public access to the operations of the judiciary and the interest of confidentiality in juvenile proceedings. *See, e.g., Wideman v. Garbarino,* 160 Ariz. 16, 770 P.2d 320 (1989); *Ex parte The Island Packet,* 308 S.C. 198, 417 S.E.2d 575 (1992); *Associated Press v. Bradshaw,* 410 N.W.2d 577 (S.D.1987); *Matter of N.H.B.,* 769 P.2d 844 (Utah App.1989).

In Tennessee, these concerns about juvenile proceedings are reflected in Tenn.Code Ann. § 37–1–124(d), which provides:

> Except in hearings to declare a person in contempt of court, and in hearings under § 37–1–146 [juvenile traffic offenders], the general public may be excluded from hearings under this part. The court may temporarily exclude the child from the hearing except while allegations of his delinquency or unruly conduct are being heard.

In addition, Rule 27(a), Tennessee Rules of Juvenile Procedure provides:

> Juvenile court hearings shall be conducted in accordance with the highest standards of courtroom conduct and deportment which shall be prescribed in writing by local rules. Proceedings, except dependent and neglected cases, shall be open to all persons who are properly concerned. In the discretion of the court, the general public may be excluded from any juvenile or paternity proceeding and only those persons having a direct interest in the case may be admitted.

In addition to the principles discussed in the cases from other jurisdictions, we must be guided by the policies reflected in our own statute and rule.

## CONCLUSION

The nature and purpose of juvenile proceedings are different from those involved in criminal proceedings. Despite such differences, we believe that an approach that bal-

ances the public's interest in open judicial proceedings and the litigants' right to a fair trial should be applied in deciding whether to close juvenile proceedings.

Based on the desirability of expediting further proceedings in the Juvenile Court for Giles County and on the relatively meager nature of the record before us, we have not undertaken in this opinion to analyze the ramifications of any particular provisions of the Constitution of Tennessee on the issues that may be presented in this case.

From the record before us, we do not know what factors the juvenile court considered or how it analyzed them in determining to close all further proceedings. Therefore, we vacate that portion of the order of the Juvenile Court for Giles County involving closure of further proceedings and remand the case for a reconsideration of the closure motion. Upon remand, the juvenile court shall balance the parties' respective interests, as described above, and shall apply the following rules:

1. The party seeking to close the hearing shall have the burden of proof;

2. The juvenile court shall not close proceedings to any extent unless it determines that failure to do so would result in particularized prejudice to the party seeking closure that would override the public's compelling interest in open proceedings;

3. Any order of closure must be no broader than necessary to protect the determined interests of the party seeking closure;

4. The juvenile court must consider reasonable alternatives to closure of proceedings; and

5. The juvenile court must make adequate written findings to support any order of closure.

ANDERSON, C.J., and REID, BIRCH, WHITE, JJ., concur.