STATE of Tennessee, Appellee,

v.

James MONTGOMERY and
Tony Carruthers,

v.

MEMPHIS PUBLISHING COMPANY,
Intervenor–Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

May 24, 1996.

No Permission to Appeal Applied
for to the Supreme Court.

S. Russell Headrick, Memphis, Paul E. Prather, Memphis, Armstrong, Allen, Prewitt, Gentry, Johnson & Holmes, of counsel, for Appellants.

Charles W. Burson, Attorney General & Reporter, Amy L. Tarkington, Assistant Attorney General, Nashville, John W. Pierotti, District Attorney General, Phillip Gerald Harris, J. Robert Carter, Assistant District Attorneys General, Memphis, for Appellee.

1. Tenn.R.App.P. 10.

## OPINION

JONES, Presiding Judge.

This Court granted Memphis Publishing Company's application for an extraordinary appeal[1] to determine whether a trial court can bar the media from publishing the name of a prosecution witness when the witness appears in open court during a public trial and uses his true or given name while testifying. In this case, the prior restraint placed upon the name of Andre Johnson violated the rights guaranteed to Memphis Publishing Company by the First Amendment to the United States Constitution and Article I, § 19 of the Tennessee Constitution. Therefore, this cause is reversed and remanded for further proceedings consistent with this opinion.

### I.

On Saturday morning, April 20, 1996, the Honorable Joseph B. Dailey ruled *sua sponte* that the media was barred from publishing the names of nine prosecution witnesses, who were to testify in the capital murder trial of *State v. James Montgomery and Tony Carruthers*. This prior restraint did not impede the media from printing the testimony given by these witnesses.

Counsel for the Memphis Publishing Company arrived at the courtroom shortly after the ruling. Judge Dailey and counsel engaged in a discussion of the facts and the law governing prior restraints. Counsel asked Judge Dailey to reconsider his ruling. Judge Dailey refused to relent. However, Judge Dailey agreed to meet with counsel later in the day after counsel had the opportunity to research the law controlling the issue in controversy.

Judge Dailey and counsel for the Memphis Publishing Company met after the trial had recessed for the day. Again, Judge Dailey and counsel discussed the facts and the law. Counsel brought to Judge Dailey's attention that approximately one-half of the names on the list distributed by Judge Dailey had already appeared in articles contained in the *Memphis Commercial Appeal*,

the newspaper owned and published by Memphis Publishing Company. Judge Dailey subsequently ruled that the Memphis Publishing Company could publish the names of eight of the nine prosecution witnesses. However, Judge Dailey kept the prior restraint in place on the name of Andre Johnson. Judge Dailey stated that he would read the brief and materials furnished by counsel over the weekend and would announce his ruling as to Andre Johnson on Monday morning, April 22, 1996, at 9:00 a.m.

Judge Dailey conducted the hearing on Monday morning. He permitted the Memphis Publishing Company to intervene in the criminal case. He announced that he was maintaining the prior restraint on Andre Johnson's name.

Shortly after the hearing, the Memphis Publishing Company filed an application for extraordinary appeal pursuant to Rule 10, Tenn.R.App.P. This Court granted the application on April 23, 1996. The State of Tennessee filed an "Answer in Opposition to the Application for Extraordinary Appeal" on April 26, 1996. No other party has expressed an interest in this litigation. Furthermore, the parties have agreed that they do not wish to make oral argument in support of their respective positions.

The case of *State v. Montgomery and Carruthers* terminated on Friday, April 26, 1996. The jury convicted both Montgomery and Carruthers of three counts of murder in the first degree, especially aggravated kidnaping, and especially aggravated robbery. The jury subsequently returned three death sentences for both defendants, one for each victim.

## II.

█ The proper way to test a prior restraint is by motion to intervene. An interested person or media representative must seek permission to intervene before the party has standing to contest the prior restraint, and, ultimately, test it in the appellate court.[2]

█ If a person or entity has been permitted to intervene and the trial court refuses to dissolve the prior restraint, the intervenor may seek appellate review pursuant to Rule 10, Tenn.R.App.P.[3] Recently, the Tennessee Supreme Court adopted Rule 30, which governs media coverage in the courtroom. This rule provides an aggrieved party with the right to seek appellate review pursuant to Rule 10, Tenn.R.App.P. *See* Tenn.Sp.Ct.R. 30(E).[4]

In this case, the Memphis Publishing Company sought permission and was granted the right to intervene in the criminal case. When the trial court refused to remove the prior restraint, the Memphis Publishing Company sought appellate review in this case pursuant to Rule 10, Tenn.R.App.P. This Court granted the application. In summary, the Memphis Publishing Company is properly before this Court.

## III.

### A.

Judge Dailey did not conduct a hearing or hear evidence before placing the prior restraint upon the name of Andre Johnson. It appears that a potential prosecution witness saw the name of a prior prosecution witness named in a newspaper article, exited the back door of his home, and went into hiding. The potential witness failed to appear in court as required. An investigator for the District Attorney General's Office sought the potential witness. The investigator in turn told an assistant district attorney general what had occurred, and the assistant district attorney general told the trial court what had been reported to him.[5] Judge Dailey stated that placing the name of Andre Johnson in the newspaper might scare other witnesses from appearing to testify.

The prior restraint did not preclude the Memphis Publishing Company from printing

---

2. *State v. Drake,* 701 S.W.2d 604, 608 (Tenn. 1985).

3. *Drake,* 701 S.W.2d at 608; *see State v. James,* 902 S.W.2d 911 (Tenn.1995).

4. This rule exempts the print media who are not using cameras in the courtroom. Tenn.Sup. Ct.R. 30(F)(5).

5. Judge Dailey acknowledged that the information he was relating was "third hand" hearsay.

the testimony, or excerpts of the testimony, given by Andre Johnson. Moreover, the name of Andre Johnson can be printed by the Memphis Publishing Company after the trial has been concluded.

This was a public trial where the families of the accused, the families of the victims, and interested spectators were permitted to enter the courtroom and listen to the testimony of all of the witnesses. When Andre Johnson appeared as a prosecution witness, he identified himself as Andre Johnson; the people inside the courtroom heard him state his true or given name as well as the testimony that he gave. Ironically, Johnson was well known—a personal acquaintance—of both defendants, Montgomery and Carruthers. Johnson, like Montgomery and Carruthers, was a member of a gang. He, like the defendants, trafficked in narcotics, and he had been previously convicted of a criminal offense and served time for the offense. The Memphis Publishing Company printed the substance of Johnson's testimony, but did not print Johnson's name.

### B.

It has long been established that what occurs in a public courtroom constitutes public property.[6] Equally well-established is that a court does not have special rights "which enables it, as distinguished from other institutions of democratic government, to suppress ... or censor events which transpire [in public] proceedings before it."[7] Thus, "[t]hose who see and hear what transpired [in open court] can report it with impunity."[8]

The United States Supreme Court has reiterated what it said in *Craig* on numerous occasions; when there is an open, public trial, the media has an absolute right to publish any information that is disseminated during the course of the trial.[9] This Court will discuss the salient portions of these decisions.

In *Sheppard v. Maxwell,* the United States Supreme Court was concerned with the right of the accused to receive a fair trial. There was enormous media coverage surrounding the prosecution of Dr. Sheppard for the murder of his wife. In ruling, the court said in part:

> From the cases coming here we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, *there is nothing that proscribes the press from reporting events that transpire in the courtroom.*[10]

In *Nebraska Press Ass'n v. Stuart,* the preliminary hearing was open to public. However, the court entered an order that prohibited everyone in attendance from "releas[ing] or authoriz[ing] the release for public dissemination in any form or manner whatsoever any testimony given or evidence adduced" during the preliminary hearing.[11] The Supreme Court, citing *Sheppard,* held that this prior restraint violated the First Amendment. In ruling, the court said:

> To the extent that this order prohibited the reporting of evidence adduced at the open preliminary hearing, it plainly violated settled principles: "there is nothing

---

6. *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).

7. *Craig,* 331 U.S. at 374, 67 S.Ct. at 1254.

8. *Craig,* 331 U.S. at 374, 67 S.Ct. at 1254.

9. *See Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977); *Nebraska Press Ass'n v. Stuart,* 427 U.S.

539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

10. 384 U.S. at 362–63, 86 S.Ct. at 1522, 16 L.Ed.2d at 620 (emphasis added).

11. 427 U.S. at 542, 96 S.Ct. at 2795, 49 L.Ed.2d at 688.

that proscribes the press from reporting events that transpire in the court-room...." The County Court could not know that closure of the preliminary hearing was an alternative open to it until the Nebraska Supreme Court so construed state law; but *once a public hearing had been held, what transpired there could not be subject to prior restraint.*" [12]

In *Oklahoma Publishing Co. v. District Court*, the trial court entered a pretrial order which "enjoined members of the news media from 'publishing, broadcasting, or disseminating in any manner, the name or picture of [a] minor child.'" [13] The Oklahoma Publishing Company challenged the prior restraint created by the trial court. In ruling, the court said:

Petitioner asks us to only hold that the First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public. We think this result is compelled by our recent decisions in *Nebraska Press Assn. v. Stuart....*, and *Cox Broadcasting Corp. v. Cohn ....*

\* \* \* \* \* \*

The court below found the rationale of these decisions to be inapplicable here because a state statute provided for closed juvenile hearings unless specifically opened to the public by court order and because "there is no indication that the judge distinctly and expressly ordered the hearing to be public." We think *Cox* and *Nebraska Press* are controlling nonetheless. Whether or not the trial judge expressly made such an order, members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in the courtroom or to the photographing of the juvenile as he

left the courthouse. There is no evidence that petitioner acquired the information unlawfully or even without the State's implicit approval. The name and picture of the juvenile here were "publicly revealed in connection with the prosecution of the crime...." Under these circumstances, the District Court's order abridges the freedom of the press in violation of the First and Fourteenth Amendments. [14]

In *San Antonio Express–News v. Roman*, [15] a case strikingly similar to this case, two minor witnesses testified as defense witnesses. When the minors completed their respective testimony, "the trial court ordered ... the news media in general not to broadcast, report, or publish the names of these two minor witnesses." [16] In holding that the order of the trial court violated the constitutional rights of the media, the Texas Court of Appeals said:

In the instant case, the trial was open to the public and was attended by the general public as well as the media. The testifying minors identified themselves by first and last names and gave public testimony. No request to conceal their identities was made prior to their giving testimony. Once their names were placed in the public record, before a courtroom of spectators, no constitutionally valid reason to limit access to that information existed.... The trial court clearly abused its discretion in entering the gag order. [17]

 In summary, once Andre Johnson testified in open court and revealed his first and last name, no valid reason existed for the prior restraint on Johnson's name. The trial court's refusal to remove the prior restraint violated the First Amendment rights of the Memphis Publishing Company and its employees. The law is crystal clear: the media may publish the names and testimony of witnesses testifying in open court during a public trial with impunity. Any restraint

**12.** 427 U.S. at 568, 96 S.Ct. at 2807, 49 L.Ed.2d at 703 (emphasis added) (citations omitted).

**13.** 430 U.S. at 308, 97 S.Ct. at 1045, 51 L.Ed.2d at 357.

**14.** 430 U.S. at 310–12, 97 S.Ct. at 1046–47, 51 L.Ed.2d at 358–59 (citations omitted).

**15.** 861 S.W.2d 265 (Tex.Ct.App.1993).

**16.** 861 S.W.2d at 266.

**17.** 861 S.W.2d at 268 (citations omitted).

placed on this right is violative of the First Amendment.

## IV.

The State of Tennessee has filed a motion to dismiss this appeal. The motion alleges that the issue to be decided is moot because the trial has ended and the prior restraint on the name of Andre Johnson has been removed. The trial court ruled that the Memphis Publishing Company could publish Johnson's name after the trial had ended. The Memphis Publishing Company, relying on the exceptions to the mootness doctrine, argues that this Court should address the issue on the merits since it involves a constitutional right.

█ This jurisdiction recognizes two exceptions to the mootness doctrine. First, if the error is capable of repetition but may evade appellate review, an appellate court may address the issue on the merits. Second, if the issue to be decided is of great public interest and important to the administration of justice, an appellate court may address the issue on the merits. Both of these exceptions were recognized in the recent case of *State v. Morrow and Meredith Corp.*,[18] where this Court addressed a violation of Rule 30, Tennessee Supreme Court. This Court addressed the issue notwithstanding the fact the trial had ended and the relief sought could not be implemented.

## A.

The United States Supreme Court addressed the first exception to the mootness rule in *Gannett Co. v. DePasquale*.[19] As the Court said in *Gannett:*

> To meet that test, two conditions must be satisfied: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."[20]

This exception is recognized in *McIntyre v. Traughber*[21] and *LaRouche v. Crowell*.[22]

█ These conditions have been met in this case. The ruling came within the last week of the trial. It expired at the conclusion of the trial. Thus, it was too short in duration to permit full review. If this procedure is not corrected at this time, there is certainly a reasonable expectation that the procedure in question could be repeated.[23]

## B.

The second exception, issues of great public interest and importance to the administration of justice, has been recognized in several cases.[24] The First Amendment rights of the press are always of great public interest and are of vital importance to the administration of justice in this state. As a result, the appellate courts of this state have zealously guarded the First Amendment rights of the print and electronic media.

SUMMERS and HAYES, JJ., concur.

**18.** Robertson County No. 01–C–01–9601–CC–00022, slip op. at 4, n. 2, 1996 WL 170679 (Tenn.Crim.App., Nashville, April 12, 1996).

**19.** 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608, 620 (1979).

**20.** 443 U.S. at 377, 99 S.Ct. at 2904, 61 L.Ed.2d at 620 (quoting from *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975)).

**21.** 884 S.W.2d 134, 137 (Tenn.App.1994).

**22.** 709 S.W.2d 585, 587 (Tenn.App.1985).

**23.** *See Nebraska Press Ass'n*, 427 U.S. at 546–47, 96 S.Ct. at 2797, 49 L.Ed.2d at 690.

**24.** *See Walker v. Dunn*, 498 S.W.2d 102, 104 (Tenn.1972); *New Rivieria Arts Theatre v. State ex rel. Davis*, 219 Tenn. 652, 658, 412 S.W.2d 890, 893 (1967); *McIntyre*, 884 S.W.2d at 137.