IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 18, 2014 Session

**STATE OF TENNESSEE v. LETALVIS COBBINS, LEMARICUS DAVIDSON, GEORGE THOMAS, AND VANESSA COLEMAN**

**IN RE: GARY CHRISTIAN, DEENA CHRISTIAN, HUGH NEWSOM, & MARY NEWSOM TO INTERVENE FOR ACCESS TO COURT RECORDS**

Appeal from the Criminal Court for Knox County
Nos. 86216A, 86216B, 86216C, 86216D    Walter C. Kurtz, Judge

_____

No. E2013-02726-CCA-WR-CO - **Filed February 4, 2015**

_____

Petitioners, the parents of the victims in the underlying criminal cases, sought to intervene in those proceedings for the purpose of challenging the trial court's order to seal portions of an investigative file of the Tennessee Bureau of Investigation that was identified during the motions for new trial in the underlying cases. Because we conclude that Petitioners have no statutory or constitutional right to access the sealed confidential information in the file, we affirm the trial court's denial of their request to unseal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the petitioners, Gary and Deena Christian and Hugh and Mary Newsom.

Herbert H. Slatery III, Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; and Linda D. Kirklen, Assistant Attorney General, for the respondent, Tennessee Bureau of Investigation.

**OPINION**

*Factual and Procedural Background*

These cases arise from the heinous kidnapping, sexual assault, torture, and murder of a young couple in January 2007. After an investigation, Defendants Letalvis Cobbins, Lemaricus Davidson, George Thomas, and Vanessa Coleman were indicted and prosecuted for numerous crimes stemming from this incident. At the original trials on these offenses, the presiding trial judge was Richard Baumgartner. All of the Defendants were convicted in separate trials and sentenced. After the sentencing hearings, the presiding trial judge pled guilty to a charge of official misconduct and resigned before hearing the Defendants' motions for new trial. Senior Judge Jon Kerry Blackwood was then appointed as the successor judge.

On June 9, 2011, Judge Blackwood tentatively approved the jury's verdict for each of the Defendants but reserved entry of his ruling. After the Tennessee Bureau of Investigation ("TBI") completed a file on its investigation into the misconduct of the original trial judge ("the TBI file"), Judge Blackwood ordered the State to produce the TBI file in its entirety for review by the court so that he could determine whether it contained potentially exculpatory information to which the Defendants would be entitled under *Brady v. Maryland*, 373 U.S. 83 (1963). After reviewing the TBI file in chambers, Judge Blackwood ordered the disclosure of the TBI file for examination by defense counsel and the prosecution. Based on the TBI file, the Defendants amended their motions for new trial.

The State of Tennessee and the Defendants agreed to the following provisions in a "Joint Stipulation and Order" that was signed and entered by Judge Blackwood on September 19, 2011:

1. The Tennessee Bureau of Investigation ("TBI") file, previously provided to undersigned counsel, Bates Numbered DA/TBI-000001 through DA/TBI-001212, regarding the agency's investigation into the activities of former judge, Richard Baumgartner, shall be made part of the record in each of the above named cases, and shall remain under seal pending further order of this Court.

2. The persons interviewed by the TBI, if called to testify, would testify in accordance and consistent with their previous statements to the TBI as reflected in the TBI's investigatory file.

3. The above referenced TBI file is admissible at the defendants' motion for new trial hearings and shall be considered as evidence by the Court

in determining the defendants' respective motions for new trial.

4.  The State of Tennessee reserves the right to object to the admission of specific portions of witnesses['] statements contained within the TBI file on the grounds that they are hearsay, opinion, conclusion, or on grounds of relevance.

5.  The Defendants will enumerate, including Bates number, the portions of the TBI file that they intend to introduce pursuant to this stipulation on or before September 30, 2011, and the State agrees to raise any objections to the admission of the enumerated portions of the TBI file, including the associated Bates number, on or [b]efore October 28, 2011, so as to permit the Court to resolve any objection prior to the evidentiary hearing.

Consistent with the terms of paragraph five of the Joint Stipulation, on September 22, 2011, Defendant Thomas gave notice of twenty-seven portions of the TBI file, over 130 pages, which he intended to introduce at the hearing on his motion for new trial. The State filed a response containing its objections to the admissibility of some of the identified portions.

On December 1, 2011, Judge Blackwood held a second hearing where each Defendant made the twenty-seven portions of the TBI file that were identified by Defendant Thomas sealed exhibits in their respective cases. The State made an exhibit of its objections to the twenty-seven portions of the TBI file. At the conclusion of the hearing, the trial judge entered its own redacted ("Exhibit 5") and unredacted ("Exhibit 6") versions of the TBI file as exhibits in each of the Defendants' cases.

Judge Blackwood granted the Defendants new trials, finding that the misconduct by the original trial judge constituted structural constitutional error. During its oral ruling, the court extensively detailed the criminal activities of the original trial judge as contained in the redacted TBI file. After concluding its ruling, the court then provided the following explanation:

The housekeeping measures I'm addressing at this time is that the next numbered exhibit [Exhibit 5] to this case will be the TBI file that the court relied upon in its finding of facts and conclusions of law. This is a redacted copy, because there are certain portions in this copy that the Court has redacted because the information contained in there has no business being in the public domain and is not relevant at all to any of the issues that are pertinent to this

case.

The next numbered exhibit [Exhibit 6] in this case will also be the unredacted copy of the exhibit that I just mentioned. This one's being filed under seal because it is the exact copy of the TBI file that the Court relied upon, however it does not contain the redactions, and it's being marked for identification purposes only as the next numbered exhibit in case there is any appellate review that might be necessary.

The next order of housekeeping that we need to address is that there have been various motions filed and alluded to today by the defendants and as well as the state that deal with motions for new trial and various pleadings in this case. To the extent that there might still be any of those documents that are under seal, . . . the seal will be removed. The only document that's going to remain completely sealed in this case is the document that contains the entire TBI file. That document will remain under seal.

At the request of the prosecutor, the court agreed to leave the State's filed objections to the TBI file under seal. The court also clarified that it was leaving sealed all of the twenty-seven portions of the TBI file entered into evidence by the Defendants in addition to the unredacted portions of the TBI file that the court entered separately as Exhibit 6[1]

Granting the State's extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, the Supreme Court of Tennessee reversed the trial court's ruling based on legal error and remanded for reconsideration of the motions for new trial. On remand, Judge Blackwood again granted new trials to the Defendants. The State filed a motion to recuse Judge Blackwood, which this Court granted on appeal. *See State v. Letalvis Cobbins*, No. E2012-02025-CCA-10B-DD, 2012 WL 5266427, at \*23 (Tenn. Crim. App. Oct. 25, 2012), *perm. app. denied* (Tenn. Feb. 12, 2013). Senior Judge Walter Kurtz was then appointed as the new successor judge for Defendants Cobbins, Davidson, and Thomas. As the thirteenth juror, he approved the convictions of Defendants Cobbins and Davidson and denied their motions for new trial. Judge Kurtz granted Defendant Thomas's motion for new trial.[2]

---

[1]In its memorandum and order disposing of Petitioners' request to unseal the redacted portions of the TBI file, the trial court referenced a December 5, 2011 order of Judge Blackwood. Petitioners have failed to include this document in the technical record on appeal.

[2]Defendant Cobbins's convictions and sentences were affirmed on direct appeal. *State v. Letalvis Darnell Cobbins*, No. E2013-00476-CCA-R3-CD, 2014 WL 4536564 (Tenn. Crim. App. Sept. 12, 2014). The direct appeals of Defendants Davidson and Thomas are still pending. Defendant Coleman's motion for

During the retrial of Defendant Thomas, on May 2, 2013, Petitioners, the respective parents of the victims in the underlying criminal proceedings, filed a pleading titled "Petition to Intervene for Access to Court Records," seeking access to the TBI file ("Exhibit 6") filed under seal on December 1, 2011, during the hearing on the motions for new trial. The TBI filed a response opposing Petitioners' intervention and right to access the TBI file. After a hearing on July 2, 2013, and several additional filings by the parties, the trial court entered a memorandum and order on July 19, 2013, granting Petitioners' motion to intervene but denying their request that the TBI file be unsealed. On August 19, 2013, Petitioners filed a notice of appeal with this Court.[3]

*Analysis*

Petitioners raise various abstract claims under the constitutions of Tennessee and the United States to support their alleged right to access the TBI file at issue. Petitioners also argue that Tennessee Code Annotated section 10-7-504(a)(2)(A), which designates investigative files of the TBI as confidential, is inapplicable in this case or, alternatively, should be held unconstitutional as applied. Procedurally, the TBI argues that many of Petitioners' legal arguments, including their challenge to the constitutionality of Section 10-7-504(a)(2)(A), were not raised in the trial court and should be deemed waived on appeal. The TBI also argues that Petitioners lack standing to intervene in this case because the TBI

---

new trial was granted, and the convictions and sentences from her retrial were affirmed on appeal. *State v. Vanessa Coleman*, No. 2013-01208-CCA-R3-CD, 2014 WL 6908409 (Tenn. Crim. App. Dec. 9, 2014).

[3]On April 17, 2014, this Court, sua sponte, entered a show cause order as to the legal authority for Petitioners' appeal from the denial of their motion to intervene. After briefing by the parties, this Court entered an order on August 25, 2014, treating Petitioners' appeal as a petition for a common law writ of certiorari. Order, No. E2013-02726-CCA-WR-CO (Tenn. Crim. App. Aug. 25, 2014). In that order, this Court identified the limited instances in which a writ of certiorari may be granted:

> As the supreme court stated in *State v. Lane*, 254 S.W.3d 349 (Tenn. 2008), "[a] writ of certiorari is an order from a superior court to an inferior tribunal to send up a complete record for review, so that the reviewing court can ascertain whether the inferior tribunal has exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." *Id.* at 354. "[A] common-law writ of certiorari is appropriate to correct '(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion.'" *Id.* at 355 (quoting *Willis v. Tenn. Dept. of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)).

Accordingly, we proceed with an inquiry into whether the trial court's ruling that denied Petitioners' request to unseal the redacted portions of the TBI file was illegal as a violation of state or constitutional law.

file was not used in the second trial of Defendant Thomas and, therefore, Petitioners' claim for relief lacks a common issue of law or fact with the underlying proceeding. On the merits, the TBI argues that Section 10-7-504(a)(2)(A) controls the outcome of this case and does not violate any of Petitioners' state or federal constitutional rights.

## I. Standing

As a threshold issue, we must first determine whether Petitioners have standing to bring their claim. In its memorandum and order, the trial court "reject[ed] the State's position that [P]etitioners do not have standing," reasoning that "[m]embers of the public may petition or move the court for access to records they deem subject to public inspection." On appeal, the TBI presses this argument, asserting that Petitioners' claim for access to judicial records lacks a common issue of law or fact with the underlying retrial of Defendant Thomas. Specifically, the TBI posits that the TBI file is "irrelevant to whether Thomas was guilty of the offenses or how he should be sentenced and was not part of the record before the court in Thomas'[s] second trial." Additionally, the TBI contends that there is no Tennessee case law "where a court has allowed a third-party to intervene in one trial to unseal or obtain records used in a different trial."

Tennessee courts have long recognized that the media may move to intervene in civil and criminal trials to seek access to judicial proceedings and records. *See Ballard v. Herzke*, 924 S.W.2d 652, 657 (Tenn. 1996) (permitting media intervention in civil litigation "to seek modification of protective orders to obtain access to judicial proceedings or records"); *State v. Drake*, 701 S.W.2d 604, 609 (Tenn. 1985) (establishing "the substantive and procedural law applicable to motions for closure or restrictive orders in criminal trials and pre-trial proceedings"); *Knoxville News-Sentinel v. Huskey*, 982 S.W.2d 359, 362-63 (Tenn. Crim. App. 1998) (affirming intervention in a criminal proceeding "by a media entity to examine sealed fee and expense documents relating to public monies expended in the defense of indigent criminal defendants"). The media and the public have coterminous rights of access under the federal Constitution. *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." (citations omitted)). Therefore, the fact that Petitioners are private citizens, rather than journalists or media representatives, does not diminish their standing to intervene in any way. *See Ballard*, 924 S.W.2d at 657 (stating that "intervention is not dependent on, nor is it determined by, the status or identification of the parties nor the nature of the dispute" (internal quotation and citation omitted)).

The TBI correctly points out that the issue of intervention and the issue of modifying an order to seal are separate and distinct. *See id.* (declaring that "the question of intervention

is collateral to, and does not have any bearing on, the primary issue—modification of the protective order"). As to the former, "the decision to allow intervention is a matter entrusted to the trial court's discretion, and the decision should not be reversed by an appellate court absent a showing of abuse of discretion." *Id.* at 658. A court abuses its discretion only where it "(1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013). For standing in cases such as this, "[w]hat is necessary to intervene is that the proposed intervenor demonstrate that its claims have 'a question of law or fact in common' with the main action." *Ballard*, 924 S.W.2d at 657 (quoting Tenn. R. Civ. P. 24.02). This requirement usually will not be an obstacle for third parties seeking intervention to request disclosure of court documents. *See id.* ("Here, as in all such cases, by virtue of the fact that the media entities challenge the validity of the protective order entered in the main action, they meet the requirement . . . that their claim have 'a question of law or fact in common' with the main action."); *see also In re NHC—Nashville Fire Litigation*, 293 S.W.3d547, 572 n.26 (Tenn. Ct. App. 2008); *cf. Huskey*, 982 S.W.2d at 362 n.2 (adopting the reasoning of *Ballard* for criminal proceedings without expressly requiring proof of a common question).

The TBI argues that there is no common question in this case because the trial court's order sealing the TBI file was part of the case for Defendant Thomas's first trial but is not a part of his second trial. In other words, the TBI suggests that Petitioners have intervened in the wrong proceeding. We disagree. The proper procedural mechanism for a third party intervenor to seek disclosure of sealed records associated with a judicial proceeding may vary with jurisdiction. *Drake*, 701 S.W.2d at 606-07; *see generally* 76 C.J.S. *Records* § 87 (2014). Our supreme court has previously held that a motion to intervene at the trial level is the appropriate mechanism in Tennessee. *See Drake*, 701 S.W.2d at 607. While it may be preferable for intervention to occur prior to a trial court's decision to close certain stages of a judicial proceeding, *cf. id.* at 608 ("Interested members of the public and the media may intervene and be heard in opposition to the motion [for a closure order]."), our cases have previously permitted third parties to intervene and seek modification after particular judicial documents have already been sealed. *See, e.g.*, *Huskey*, 982 S.W.2d at 361 (motion to intervene and to unseal documents filed after court's order to seal said documents). Although we did not find any Tennessee authority specifically addressing the timeliness of third party motions to modify an initial sealing order, case law in other jurisdictions permits post-judgment intervention by third parties to seek access to sealed court records even after substantial lengths of time have lapsed. *See, e.g.*, *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 785 (1st Cir. 1988) ("Numerous courts have allowed third parties to intervene in cases directly analogous to this one, many involving delays measured in years rather than weeks."); *Mokhiber v. Davis*, 537 A.2d 1100, 1105-06 (D.C. 1988) (reversing denial of an investigative reporter's "motion to intervene in a suit settled by the original parties four years earlier . . . .

-7-

trying to remove protective orders that barred public access to various documents").

We find no reason why Petitioners should not be allowed to intervene at this time, despite the fact that the trial court ordered the unredacted portion of the TBI file sealed on December 1, 2011, after it ruled on the motions for new trial. There is no prejudice to the interests of the original parties, and in fact, neither the State of Tennessee nor Defendant Thomas objected to Petitioners' intervention or the unsealing of the entire TBI file. The proximity of the motion to intervene to the initial sealing order may be relevant to the trial court's analysis when evaluating the merits of the intervenor's motion to unseal or modify, but it has no bearing on the issue of intervention. *See Mokhiber*, 537 A.2d at 1105. As for the TBI's argument that the petition to intervene was filed in the wrong proceeding, we note that the caption of the petition purports to intervene in the original cases of all Defendants. We do not find a material distinction between intervention in the original trial proceedings or intervention in the retrial proceedings for purposes of the public's right to access. In this case, the motion is before the same trial court in either event.

Accordingly, we find that Petitioners do have proper standing to bring their petition to intervene. Furthermore, because the trial court did not apply the incorrect legal standard or reach an illogical decision, we find that it did not abuse its discretion in permitting Petitioners to intervene.

## II. Waiver

Before we consider the merits of Petitioners' request that the entire TBI file be unsealed, we must consider whether Petitioners have waived any of their appellate arguments. Specifically, the TBI asserts that Petitioners' state constitutional claims are impermissibly broad and contain additional references to a few provisions of the Constitution of Tennessee that were not raised in the trial court.

Overly broad legal arguments on appeal will be deemed waived where "it is impossible for this Court to determine the precise issues raised." *State v. Williams*, 914 S.W.2d 940, 947 (Tenn. Crim. App. 1995). Although Petitioners' brief is not a model of clarity or brevity, we can discern the gravamen of the legal arguments raised therein. We do not find Petitioners' arguments to be waived for overbreadth.

"It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) (citations omitted). We acknowledge that Petitioners' brief provides more extensive treatment of their constitutional claims than was presented to the trial court; however, we find that the overall thrust and substance of these claims remains the same on

appeal as below. We decline to find any of Petitioners' legal arguments waived on this ground.

### III. Public Access to the TBI File

After granting Petitioners' motion to intervene, the trial court denied their request to unseal the TBI file. The trial court reasoned that the government's interest in the continuing confidentiality of the TBI file pursuant to Tennessee Code Annotated section 10-7-504(a)(2)(A) outweighed the public's interest in access to that information. In support of its reasoning, the trial court explained:

> The court rejects the petitioners' argument that statutorily confidential records somehow by metamorphosis lose their confidential protection when filed in court. Such is not the case. They only lose their confidential protection if disclosed in court or if relied upon by the judge in making a decision related to the merits of the case.

Petitioners argue that the trial court erred in refusing to unseal the TBI file. Petitioners further argue that, to the extent Section 10-7-504(a)(2)(A) bears on this case, it is unconstitutional under the federal and state constitutions. The TBI contends that the statute is controlling and is constitutional.

The Public Records Act of Tennessee ("PRA") mandates that "[a]ll state, county and municipal records shall . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." T.C.A. § 10-7-503(a)(2)(A). It is a statutory codification of the common law public access doctrine that established the "public's right to examine governmental records." *Schneider v. City of Jackson*, 226 S.W.3d 332, 339 (Tenn. 2007) (citing *Ballard*, 924 S.W.2d at 661). Because the statute has supplanted the common law right, the provisions of the Public Records Act are the sole basis for public access to government records in Tennessee. *See id.* (quoting *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1996)). There is no constitutional right of the public to access governmental records. *Allen v. Day*, 213 S.W.3d 244, 248 (Tenn. Ct. App. 2006) ("Neither the Tennessee Constitution nor the United States Constitution grant subject matter jurisdiction to the courts of this State to adjudicate claims which seek access to records in the possession of either a public or private entity."); *see LAPD v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999) (noting that a state government may constitutionally choose to withhold information within its control); *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources within the government's control.").

However, the provisions of the PRA "create a strong presumption of openness and express a clear legislative mandate favoring disclosure of governmental records." *Schneider*, 226 S.W.3d at 340. Because "the General Assembly has directed the courts to construe broadly the Public Records Act 'so as to give the fullest possible access to public records,'" *id.* (quoting T.C.A. § 10-7-505(d)), courts "must require disclosure 'even in the face of serious countervailing considerations,'" unless an exception grounded in state law is established. *Id.* (quoting *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994)).

Tennessee Code Annotated section 10-7-504(a)(2)(A) establishes one such exception to the disclosure mandate of the PRA:

> All investigative records of the Tennessee bureau of investigation . . . shall be treated as confidential and shall not be open to inspection by members of the public. The information contained in such records shall be disclosed to the public only in compliance with a subpoena or an order of a court of record....

It is undisputed that Section 10-7-504(a)(2)(A) is generally applicable to the TBI file at issue in this case because the file is plainly an "investigative record" of the TBI.[4]

Yet, this case is not resolved simply by a straightforward application of Section 10-7-504(a)(2)(A). Petitioners, in essence, argue that the TBI file loses its exemption from the disclosure mandate of the PRA for two reasons: either (1) it reentered the general scope

---

[4]Petitioners have challenged the constitutionality of this provision in a separate proceeding currently pending before the Court of Appeals. *State ex rel. Victor S. Johnson v. Mark Gwyn*, No. 13-0630-II (Davidson Cnty. Ch. Ct.), *appeal filed*, No. M2013-02640-COA-R3-CV (Tenn. Ct. App. Dec. 4, 2013). We note that the constitutionality of this provision has been upheld against a facial challenge in *Abernathy v. Whitley*, 838 S.W.2d 211 (Tenn. Ct. App. 1992). The court noted that the Confidential Records exemption, at the time, "includ[ed] some sixty-six other types of records which [were] classified as confidential and to which public access is forbidden or limited by statute." *Id.* at 213. The court concluded:

> Appellant has no constitutional right to examine public records. That right has been conferred upon her and all members of the public by statute enacted by the General Assembly. The same General Assembly has, by general law, limited the statutory rights of appellant and the public. The General Assembly has the power to create, limit or abolish a right which is not conferred by the Constitution.

*Id.* at 214. Relying on authority from other state courts, the court declared, "There is no generally recognized state or federal constitutional right of access to public records." *Id.* Specifically, the court asserted that "no authority is found which grants news media or the public access to records declared confidential by statute." *Id.*

of the PRA because it became a judicial record as defined by the provisions of the PRA, or (2) it became subject to the public's right of access to judicial records under either the state or federal constitutions.

## *A. The Public Records Act and Judicial Records*

We first consider whether there is a statutory basis within the PRA for a public right of access to the TBI file as a judicial record, notwithstanding the confidentiality provision of Section 10-7-504(a)(2)(A). Our supreme court has recognized that the disclosure mandate of the PRA extends to judicial records. *Ballard*, 924 S.W.2d at 661. Tennessee Code Annotated section 10-7-101 states that "records . . . shall be construed to mean any records of the . . . common law, circuit, criminal, or chancery court," and Tennessee Code Annotated section 10-7-403(2) defines "public records" to include "the pleadings, documents, and other papers filed with the Clerks of all courts." *See also Ballard*, 924 S.W.2d at 661. By including judicial records within its scope, the PRA is generally consistent with the public access doctrine that the statute codified, which also reached judicial records. *See id.* (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

However, the statutory right of access to judicial records does not attach to every document associated with a judicial proceeding. *See, e.g.*, *In re NHC*, 293 S.W.3d at 570 (acknowledging that "unfiled discovery documents are not considered to be public or judicial records"). Therefore, as a threshold issue, we must determine whether the TBI file was a judicial record subject to the presumption of public access under the PRA. In Tennessee, the PRA, as interpreted by our supreme court, delineates judicial records from non-judicial records at the point of filing. *See Ballard*, 924 S.W.2d at 661-62; T.C.A. § 10-7-403.[5]

In this case, the entire TBI file was never formally filed with the trial court. Initially, Judge Blackwood, sua sponte, ordered the TBI to produce the entire file so that it could be inspected for *Brady* material. After conducting an in camera review of the file, Judge Blackwood then disclosed the entire file to all parties in the underlying criminal proceedings. Those parties, with the approval of the court, then entered into the Joint Order and Stipulation, which designated the first 1212 pages of the file as "part of the record" to remain

---

[5]We note that the federal circuit courts have split over this issue in regards to the federal common law right of access to judicial records. *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (identifying a split between the Third and First Circuits). One approach utilizes the act of filing a document with the court as a litmus test. *See id.* (citing *Pansy v. Borough of Stroudsbourg*, 23 F.3d 772, 782 (3d Cir. 1994)). A more nuanced approach looks to a document's "role in the adjudication process." *Id.* (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)). We discuss the latter in more detail in Part III. B of this opinion.

"under seal." Therefore, there can be no claim of a right to access any contents of the TBI file not encompassed within this designated portion. The statutory right of access does not attach to unfiled documents reviewed by the parties or the court. *See In re NHC*, 293 S.W.3d at 571-72 (stating that the court was "unwilling to hold that [there is] a presumptive right of public access to unfiled discovery"); *cf. Schneider*, 226 S.W.3d at 346 (directing trial court to conduct in camera review of police field interview cards to determine whether they were subject to disclosure under the PRA or exempt under Tennessee Rule of Criminal Procedure 16(a)(2)).

At this point, however, we conclude that the statutory right of access attached to the 1212-page portion of the TBI file. The trial court's approval of the Joint Stipulation and Order, designating a portion of the TBI file as "part of the record," was tantamount to making this portion of the file a document or "other paper" filed with the trial court, similar to the filed discovery in *Ballard*. The parties in *Ballard* did not ultimately utilize all of the filed discovery in the adjudication of that lawsuit, whether by their own tactical decisions not to use particular information or by a later ruling of the trial court rendering some offered evidence inadmissible. Similarly, the parties in this case designated a portion of the TBI file as part of the record, from which the parties were then free to identify which segments therein that they desired the trial court to use when ruling on the motions for new trial. Like filed discovery, the parties could have attempted to introduce all, none, or some of the designated portion of the TBI file, and the trial court remained free to exclude any of the specifically identified portions as inadmissible when warranted. Because the nature and procedural posture of the information in both cases are equivalent, we believe they should be treated equally under the PRA.

Yet, as discussed above, the statutory right of access to judicial records under the PRA is not absolute. We do not believe that the general requirement of disclosure was intended to trump the TBI file's specific confidential designation by the General Assembly. "As a matter of statutory construction, a specific statutory provision will control over a more general statutory provision." *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998); *see also State v. Safley*, 112 S.W.2d 831, 833 (Tenn. 1938) ("A special provision in a statute will control a general provision which would otherwise include that mentioned in the particular provision." (quoting *Hayes v. Arrington*, 68 S.W.44, 46 (Tenn. 1902))). By its own language, Section 10-7-503(a)(2)(A) purports to require disclosure of public records only when no contrary state law exists. Our supreme court has repeatedly held that information falling under the purview of the general disclosure mandate of Section 10-7-503(a)(2)(A) is not open to public inspection where it is otherwise shielded by different sources of state law. *See Schneider*, 226 S.W.3d at 341 (identifying cases). Although we could not find any cases resolving the conflict between a confidentiality exemption under Section 10-7-504(a)(2)(A) and the general disclosure mandate for judicial records, we conclude that the legislature

intended for the more specific statutory exemption to prevail as a source of contrary state law.

While it is clear that Section 10-7-504(a)(2)(A) contemplates that TBI investigative files may become relevant to and involved in legal proceedings through "a court order or subpoena," we do not believe that the General Assembly intended for such information to automatically lose its confidentiality as to the public once it becomes a judicial record as defined by other provisions of the PRA. Indeed, another provision of the PRA strongly suggests precisely that. Tennessee Code Annotated section 10-7-503(c)(2) provides that "[i]nformation made confidential by this chapter shall be redacted whenever possible . . . ." This provision makes clear that confidential information that is interspersed with otherwise public information that is subject to disclosure should retain its confidential character despite its presence in open public or judicial records. *See Schneider*, 226 S.W.3d at 346 (instructing the trial court that a public record "should not be deemed exempt simply because it contains some exempt information. Rather, redaction of the exempt information is appropriate."). We, therefore, determine that the PRA did not grant a statutory right of public access to the stipulated portion of the TBI file, despite being a judicial record. While judicial records that are not covered by an applicable statutory exemption may be sealed in the trial court's discretion after considering the competing interests, *see Huskey*, 982 S.W.2d at 362, that balancing test is not available to the trial court where other state law, such as Section 10-7-504(a)(2)(A) in this case, directly removes such information from the public domain.

*B. Right to Access Under the Federal Constitution*

We turn now to Petitioners' constitutional claims. We frame the general issue before us as whether the state or federal constitutions require public access to information designated as confidential by state law when that information becomes a judicial record in a state criminal proceeding. We will begin with the Constitution of the United States.

In addition to the common law right of access that "predat[ed] the enactment of the federal Constitution," our supreme court has acknowledged that "the First Amendment to the Constitution presumes that there is a right of access to proceedings and documents which have 'historically been open to the public' and which disclosure would serve a significant role in the functioning of the process." *Ballard*, 924 S.W.2d at 661 (citing *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994)).[6]

_____

[6]Other courts have observed, however, that the Supreme Court has never expressly connected the constitutional right to access judicial proceedings with a constitutional right to access judicial documents. *See, e.g.*, *United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir. 1997) ("There is not yet any definitive Supreme Court ruling on whether there is a constitutional right of access to court documents, and, if so, the

-13-

However, this right of access is not absolute and it must be balanced against other interests . . . . This balance must be carefully struck, and any restriction on public access must be narrowly tailored to accommodate the competing interest without unduly impeding the flow of information.

*Huskey*, 982 S.W.2d at 362-63 (citing *Drake*, 701 S.W.2d at 607). When a trial court issues a restrictive order denying the public access to judicial proceedings or documents, "it is the duty of the trial judge to require the movant to advance an overriding interest that is likely to be prejudiced, consider reasonable alternatives to closing the proceedings [or sealing the documents], tailor any closure order so that it is no broader than necessary to protect that interest, and make findings adequate to support the closure." *Drake*, 701 S.W.2d at 608; *see also Waller v. Georgia*, 467 U.S. 39, 48 (1984); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984). When considering a trial court's denial of access under this standard, our review is de novo. *See Waller*, 467 U.S. at 48-49; *Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004).

Consequently, judicial records to which the First Amendment right of access attaches must be disclosed to the public unless a trial court's order to seal satisfies the heightened scrutiny standard articulated above. This remains true notwithstanding a state statutory requirement of confidentiality for those judicial records, such as Section 10-7-504(a)(2)(A), pursuant to the Supremacy Clause of the Constitution. U.S. Const. art. 6, cl. 2; *see Cohens v. Virginia*, 19 U.S. 264, 414 (1821) ("The constitution and laws of a State, so far as they are repugnant to the constitution and laws of the United States, are absolutely void."). However, the federal courts have widely acknowledged that the common law right to access judicial records and the supposed First Amendment right to access judicial records are not coterminous. While greater in protection, the First Amendment right is narrower in scope. *See, e.g.*, *Va. Dept. of State Police*, 386 F.3d at 575. As noted above, the First Amendment right only attaches to judicial records that have "historically been open to the public and which disclosure would serve a significant role in the functioning of the process." *Ballard*, 924 S.W.2d 652.[7]

_____

scope of such a right."). Although the Supreme Court has never explicitly recognized a First Amendment right of public access to judicial records, we assume that such a right exists and does apply to the State of Tennessee. *Doe v. Doe*, 127 S.W.3d 728, 732 n.3 (Tenn. 2004) ("The First Amendment applies to the states through the Fourteenth Amendment.").

[7]"This two-part inquiry is referred to as the test of 'experience and logic.'" *McVeigh*, 119 F.3d at 812 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)). Although the Supreme Court has not yet held that the First Amendment right of access applies to post-trial criminal proceedings, most courts have concluded that it does, and we will conclude likewise. *See, e.g.*, *United States v. Ellis*, 90 F.3d 447, 450 (11th Cir. 1996).

At least one federal court of appeals has held that the First Amendment right of access to judicial records does not apply to documents or information that is excluded by a trial court as inadmissible on evidentiary grounds. In *United States v. McVeigh*, 119 F.3d 806, 809 (10th Cir. 1997), the court considered a media request to unseal, among other things, exhibits attached to a defendant's motion to suppress evidence in a highly publicized criminal proceeding.[8] Finding that the trial court properly sealed statements that were inadmissible hearsay, the court held that "the First Amendment right of access does not extend to the evidence actually suppressed in [a] suppression hearing . . . ." *Id.* at 814. The court provided the following explanation:

> [T]he right of access to suppression hearings and accompanying motions does not extend to the evidence actually ruled inadmissible in such a hearing. Neither tradition nor logic supports public access to inadmissible evidence. Access to inadmissible evidence is not necessary to understand the suppression hearing, so long as the public is able to understand the circumstances that gave rise to the decision to suppress. Moreover, suppressed evidence, by definition, will not be admissible at trial, and thus press access to such evidence will not play a significant positive role in the functioning of the criminal process, as that evidence is simply irrelevant to the process.

*Id.* at 813 (citations omitted). Addressing a different piece of suppressed hearsay evidence, the court explained:

> [T]here is no tradition of access to inadmissible evidence, and access to such information would not play a positive role in the functioning of the criminal process. Rather, access would have the deleterious effect of making publicly available incriminating evidence that the district court has ruled may not be considered in assessing the defendant's guilt.

*Id.* at 814.

We find this reasoning persuasive. We do not believe that the Constitution of the United States implicitly creates a right of public access to irrelevant and extraneous documents or material that may be unearthed by the parties in a criminal proceeding and upon which the trial court or the trier of fact do not rely in determining a party's rights. This conclusion seems to accord with previous decisions of the Supreme Court of the United States on this subject. For example, in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33

---

[8]Defendant Timothy McVeigh was the bomber of the federal building in Oklahoma City in 1995. *McVeigh*, 119 F.3d at 808.

(1984), the Court firmly decided that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." The Court explained:

> A litigant has no First Amendment right of access to information made available only for purposes of trying his suit.
>
> . . . .
>
> Moreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.

*Id.* at 32-33 (citations omitted). The same rationale that supported the Court's decision in *Rhinehart* applies with equal force to irrelevant information that has been made part of the record in a proceeding by agreement of the parties but which is never formally admitted into evidence and is specifically disregarded by the trial court. The redacted portion of the TBI file in Exhibit 5, which was determined by the trial court to be irrelevant in this case, is materially indistinguishable from the non-admitted discovery in *Rhinehart*. Both were nothing more than information collected and examined by the parties but that ultimately played no role in the adjudication process because they were never entered into evidence.

Furthermore, several federal circuit courts have held that the broader common law right to access judicial documents only attaches to documents that play a "role in the adjudication process." *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)). The *Amodeo* court explained:

> We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.

*Id.* Put differently,

> This presumptive right of access attaches to those materials which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication. It follows, then, that the common-law right

of access extends to materials on which a court relies in determining the litigants' substantive rights.

*In re Providence Journal Co.*, 293 F.3d 1, 9-10 (1st Cir. 2002) (internal quotations and citations omitted). If excluded documents that are irrelevant and unutilized by the trial court are not within the scope of the broader common law right, it is quite logical to conclude that those same documents would not instead be reached by the narrower, yet more robust, protections of the First Amendment right.

In this case, the trial court redacted and sealed portions of the TBI file that it determined "ha[d] no business being in the public domain and [were] not relevant at all to any of the issues that are pertinent to this case." This was a proper admissibility determination in which the trial court excluded irrelevant material.[9] The trial court clearly explained that it was releasing to the public in Exhibit 5 all information in the TBI file on which it was relying in adjudicating the defendants' motions for new trial.[10] Indeed, the extent of the detailed information that was publicly revealed by the trial court at the hearing demonstrates that the trial court was not hesitant to unveil the lurid details of any relevant information from the TBI file. This was not a situation where the trial court considered relevant and admissible portions of the TBI file in making an adjudicatory decision and then

---

[9]Tennessee Rule of Evidence 402 states that "[e]vidence which is not relevant is not admissible."

[10]As the court in *McVeigh* explained:

> Here, the district court has only sealed those portions of the [suppression] motion and exhibits that contain materials, or excerpts from materials, ruled inadmissible in the McVeigh trial. Sealing these materials was necessary to protect the integrity of the order that the statements at issue constituted inadmissible hearsay or were otherwise inadmissible. Access to the redacted information is not needed for a full understanding of the court's decision on the motion to suppress, as the suppression hearing itself was open, and the court order provided a detailed outline of the reasons for its conclusion that the statements were inadmissible in the McVeigh trial. The court held a four-day long public suppression hearing, issued a publicly available order, and made available to the public redacted versions of the motions to suppress and attached exhibits. Thus, both the press and the public had ample opportunity to understand the circumstances surrounding [the] statements, and the reasons why those statements were deemed inadmissible against McVeigh.

119 F.3d at 813-14. Likewise, in this case, given the vast amount of information that was made publicly available regarding the nature of the original trial judge's behavior and its impact on the Defendants' original trials, we are confident that the public was capable of understanding the circumstances surrounding the motions for new trial in those cases. Additionally, we note that the scope of the trial court's disclosures and redactions appear to be quite similar to those of the district court approved of by the court in *McVeigh*.

chose to redact specific parts of the information on which it relied because it believed that the nature of that information needed to remain confidential. In its memorandum and order, the trial court specifically found that "[t]here has been no showing that the court relied upon, nor that the parties referred to, any portion of the TBI record not made a public record." Because the portions of the TBI file that Petitioners seek to unseal were inadmissible as irrelevant and not used by the trial court in the adjudication process, we conclude that they do not have a First Amendment right to that information.[11]

## *C. Right to Access Under the State Constitution*

Having determined that there is no First Amendment right to access the redacted and sealed portions of the TBI file, we also conclude that there is no greater right of access under the Constitution of Tennessee. Petitioners make bald assertions that any of a litany of state constitutional provisions guarantee them a right of access to the sealed file, including Article I, section 17;[12] Article I, section 19;[13] Article II, section 1;[14] and Article XI, section 16.[15]

---

[11]For this reason, we also conclude that *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986), relied upon by Petitioners, is distinguishable from the facts of the present case. In that case, the court considered "the district court's denials of permission to copy tape-recordings that were admitted as evidence in a criminal trial, transcripts of these tape-recordings that were used by the jury, and documentary exhibits." *Id.* at 403. Unlike the admitted evidence and transcripts considered by the jury in *Beckham*, here, the redacted portions of the TBI file were not formally admitted into evidence, or otherwise utilized, in the hearing on the motions for new trials because that information was ruled inadmissible by the trial court. Consequently, that information was not considered by the trial court in making its ruling. Additionally, we note that the *Beckham* court's decision was rooted in the common law right to access judicial records, which has been supplanted by the PRA in Tennessee, as discussed above. *See id.* at 412. The court held that the First Amendment right to access was not implicated. *Id.* at 409.

[12]"That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct."

[13]"That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof."

[14]"The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial."

[15]"The declaration of rights hereto prefixed is declared to be a part of the Constitution of this State, and shall never be violated on any pretence whatever. And to guard against transgression of the high powers we have delegated, we declare that everything in the bill of rights contained, is excepted out of the General

Those arguments are unavailing. We acknowledge that this Court has previously suggested that Article I, section 19 provides a right of access to judicial records independent of the First Amendment. *See Huskey*, 982 S.W.2d at 362 n.3. However, Petitioners provide no persuasive basis for us to conclude that the Constitution of Tennessee differs from its federal counterpart on this issue. Although Petitioners have adamantly maintained that the "open courts" provision of Article I, section 17 bears upon their access to judicial records claim, we did not find any Tennessee case law, and Petitioners have pointed us to none, suggesting that this provision is applicable. Similarly, we did not find any Tennessee case law suggesting that any of the other constitutional provisions cited by Petitioners without supporting authority are relevant to their claim.

Petitioners also argue that they are entitled special access to the redacted portions of the TBI file because they are classified as victims of crime under Tennessee law. However, despite being victims as defined by Tennessee Code Annotated section 40-38-302(4)(A)(iii)(a),[16] Petitioners have not shown that their constitutional or statutory rights in this capacity entitle them to unique access to the redacted TBI file or that the trial court's decision to seal and leave sealed the same violates any of their enumerated rights. *See generally* Tenn. Const. art. I, § 35; Victims' Bill of Rights, T.C.A. §§ 40-38-101 to 118; T.C.A. § 40-38-301 to 303. We have found no authority for the proposition that Petitioners' right to access judicial documents is broader than that of the media and the public at large.

*IV. Conclusion*

Based on our thorough review of the parties' briefs, the technical record, and the applicable law, we conclude that: (1) the trial court had jurisdiction to grant Petitioners' motion to intervene in this criminal proceeding and did not commit a "plain and palpable abuse of discretion" in doing so; and (2) the trial court did not act illegally, fraudulently, or arbitrarily by denying Petitioners' request to unseal the redacted TBI file. Petitioners do not have a statutory or constitutional right to access this confidential information. The ruling of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

---

powers of government, and shall forever remain inviolate."

[16]Under this provision, if the "natural person against whom a crime was committed" is deceased, then the term "victim" for relevant purposes means "[a] family member." T.C.A. 40-38-302(4)(A).